UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

BRANDON HEITMANN,

      Debtor.

Chapter 13
Case No. 24-41956-MAR
Hon. Mark A. Randon

_____/

MOHAMED SAAD,

      Plaintiff,

v.

BRANDON HEITMANN,

      Defendant.

Adv. Pro. No.
Hon.

_____/

## **COMPLAINT**

Mohamed Saad, Plaintiff ("Plaintiff"), by his attorneys OSIPOV

BIGELMAN, P.C., states for his complaint as follows:

### **Jurisdiction**

1.    This is an adversary proceeding in bankruptcy brought by Plaintiff

pursuant to Bankruptcy Rule 7001(4).

2.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §

157(b)(1) and (b)(2)(I) and 28 U.S.C. § 1334.

3.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (I).

**Parties**

4.      Plaintiff Mohamed Saad is an individual and owns real property located in Dearborn, Michigan ("Property").

5.      Defendant Brandon Heitmann ("Heitmann") is an individual residing at 60749 Forest Creek, Washington Township, Michigan 48094.

6.      At all times relevant to this Complaint, Heitmann was the resident agent, president, authorized agent, and the sole and managing member of Exigent Landscaping, LLC ("Exigent").

**Factual Statement**

7.      On or about August 7, 2023, Exigent filed a voluntary Chapter 11 bankruptcy petition in the U.S. Bankruptcy Court for the Eastern District of Michigan, commencing Case No. 23-46912-tjt.  The case was assigned to Judge Thomas J. Tucker.  On or about February 12, 2024, Judge Tucker converted Exigent's Chapter 11 bankruptcy case to Chapter 7.

8.      On or about February 29, 2024, Heitmann filed a voluntary Chapter 13 petition in the U.S. Bankruptcy Court for the Eastern District of Michigan, commencing Case No. 24-41956-mar.

9.      Heitmann and Exigent were engaged in the residential building and construction industry.  In particular, Heitmann and Exigent installed custom swimming pools.

10.     A residential builder's license is required to engage in such work in Michigan, pursuant to M.C.L. § 339.2401, *et. seq.*

11.     Heitmann was responsible for the operation and management of Exigent, including but not limited to the payment of invoices, collection of accounts receivable, accounts payable, and allocation of trust funds.

12.     Heitmann had sole control and authority over Exigent's bank account and was the sole person with check-signing authority for Exigent.

13.     On June 27, 2022, Plaintiff entered into a contract ("Contract") with Exigent for the construction of a custom swimming pool at the Property (see attached Exhibit A).  The total price to be paid for the work was $554,545.00.

14.     The Contract was drafted by Exigent and appears on Exigent's letterhead.

15.     Heitmann signed the Contract on behalf of Exigent.

16.     Michigan law requires contractors to include their residential builder's license information as a part of their contracts.  M.C.L. § 339.2404a.

17.     At the time the parties signed the Contract, neither Heitmann nor Exigent held a residential builders license.

18.     Nevertheless, the footer at the bottom of each page of the Contract reads "License #: 802082183."

19.     The number "802082183" is not a license number of any kind.  Rather,

it appears to be the "Identification Number," assigned to Exigent by the Michigan Department of Licensing and Regulatory Affairs, upon Exigent's registration as a limited liability company (see attached Exhibit B).

20. At the time he signed the Contract, Heitmann knew that "License #: 802082183" did not refer to a Michigan residential builder's (or any other) license number.

21. Heitmann's inclusion of this "Identification Number" on the Contract was intended to, and did, deceive Plaintiff into believing that Heitmann and/or Exigent held a Michigan residential builder's license.

22. Heitmann and Exigent also misrepresented to Plaintiff that they possessed the requisite skill and experience to satisfactorily perform under the Contract.

23. Plaintiff relied upon Heitmann's misrepresentations.

24. Plaintiff suffered damages as a result of his reliance on Heitmann's misrepresentations.

25. Plaintiff made progress payments by wire transfer to Exigent, pursuant to the Contract, as follows:

    a. July 1, 2022 - $50,000.00

    b. August 18, 2022 - $100,000.00

    c. December 29, 2022 – $100,000.00

d. May 4, 2023 – $100,000.00

26.    In addition, Plaintiff made direct payments to vendors (who otherwise threatened to withhold product), after Heitmann and Exigent failed to pay them, as follows:

a. December 12, 2022 – Messina Concrete - $16,782.45

b. December 13, 2022 – Messina Concrete - $9,566.35

c. August 1, 2023 – Dolphin Waterslides - $11,437.76

27.    Heitmann and Exigent failed to perform as required by the Contract, abandoned the project, and left the Property in disrepair.

28.    Heitmann and Exigent's (incomplete) work was improper and inadequate, which created significant safety hazards for Plaintiff and his family (see correspondence from Justin Booth, Coastal pool construction company ("Coastal"), attached hereto as Exhibit C).

29.    Heitmann and Exigent fraudulently failed to use Plaintiff's payments to pay subcontractors and suppliers associated with the Contract.

30.    Instead of using the funds that Plaintiff paid to honor the Contract, Heitmann and Exigent embezzled or converted some or all of Plaintiff's funds.

31.    Heitmann and Exigent used the funds paid by Plaintiff (and several other Exigent customers) for improper purposes, including to support Heitmann's lavish lifestyle (see attached Exhibit D, *United States Trustee's Motion to Convert*

*Case (In re Exigent Landscaping, LLC*, Case No. 23-46912, ECF No. 91, paragraphs 18-24)).

32.    By using Plaintiff's funds for purposes other than to complete the Contract, Heitmann and Exigent violated the Builder's Trust Fund Act, MCL §570.151 *et. seq.* (the "BTFA") which, pursuant to MCL §570.153, is evidence of intent to defraud.

33.    Because of Heitmann and Exigent's fraudulent misrepresentations and failure to pay subcontractors/vendors/materialmen, Plaintiff was required to pay additional funds, far in excess of the Contract amount, to remediate Heitmann and Exigent's improper and unsafe work and complete the project.

34.    The additional cost required to remediate Heitmann and Exigent's improper work and complete the contracted job properly is $484,982.73 (see quote from Coastal, attached hereto as Exhibit E).

35.    Plaintiff will therefore be required to pay $872,769.29 ($387,786.56 already expended plus $484,982.73 to remediate and complete) to properly complete the job that Heitmann and Exigent contracted to perform for $554,545.00, resulting in damages in the amount of $318,224.29.

36.    By embezzling Plaintiff's funds for his and Exigent's own use, Heitmann and Exigent also violated Michigan's conversion statute, MCL § 600.2919a.

37.     As an officer and director of Exigent who personally participated in its day-to-day operations, and who personally misappropriated Plaintiff's funds, Heitmann is personally liable for violations of the BTFA, as well as for conversion. *See BC Tile & Marble Co. v. Multi Bldg. Co.*, 288 Mich. App. 576, 586-89 (2010).

### COUNT 1 - NON-DISCHARGEABILITY OF DEBT
### 11 U.S.C. § 523(a)(2)

38.     Plaintiff restates all prior paragraphs of this Complaint as though fully set forth herein.

39.     11 U.S.C. § 523(a)(2) excepts from discharge any debt obtained by false pretenses, a false representation, actual fraud, or intentional use of a materially false statement, with the intent to deceive, on which the creditor relied.

40.     Heitmann and Exigent falsely represented to Plaintiff (a) that he and/or Exigent were licensed to perform the work required by the Contract (including by printing a fake "License #" on the bottom of each page of the Contract) and (b) that Heitmann and Exigent possessed the requisite skill and experience to satisfactorily perform under the Contract.

41.     Heitmann and Exigent knew these misrepresentations were false when made.

42.     Heitmann and Exigent made these misrepresentations with the intent to deceive Plaintiff and to induce Plaintiff to sign the Contract.

43.     Plaintiff relied on the misrepresentations.

44. Plaintiff suffered damages as a result of his reliance on the misrepresentations.

45. M.C.L. § 570.153 provides,

**Building contract fund; evidence of fraudulent detention or use.**

The appropriation by a contractor, or any subcontractor, of any moneys paid to him for building operations before the payment by him of all moneys due or so to become due laborers, subcontractors, materialmen or others entitled to payment, shall be evidence of intent to defraud.

46. Heitmann and Exigent's misappropriation of trust funds constitutes additional evidence of their intent to defraud Plaintiff.

47. Accordingly, Plaintiff's damages arise from Heitmann's "false pretenses, a false representation, actual fraud, or intentional use of a materially false statement, with the intent to deceive, on which the creditor relied."

Wherefore, Plaintiff respectfully requests that this honorable Court enter judgment in his favor in the amount of $318,224.29, plus costs, interest, and attorney's fees, and determine that such judgment is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2).

## COUNT 2 - NON-DISCHARGEABILITY OF DEBT
## 11 U.S.C. § 523(a)(4)

48. Plaintiff restates all prior paragraphs of this Complaint as though fully set forth herein.

49.     11 U.S.C. § 523(a)(4) excepts from discharge any debt arising from fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

50.     The funds Plaintiff paid to Exigent constituted "trust funds" under the BTFA.

51.     Heitmann and Exigent misappropriated funds paid by Plaintiff.

52.     Heitmann and Exigent's misappropriation of trust funds constitutes "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." *See Patel v. Shamrock Floorcovering Servs. (In re Patel)*, 565 F.3d 963 (6th Cir. 2009).

Wherefore, Plaintiff respectfully requests that this honorable Court enter judgment in his favor in the amount of $318,224.29, plus costs, interest, and attorney's fees, and determine that such judgment is non-dischargeable pursuant to 11 U.S.C. § 523(a)(4).

## COUNT 3 – STATUTORY CONVERSION
## M.C.L. § 600.2919a

53.     M.C.L. § 600.2919a provides,

**Recovery of damages, costs, and attorney's fees by person damaged; remedy cumulative.**

(1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:
    (a) Another person's stealing or embezzling property or converting property to the other person's own use.

(b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.

(2) The remedy provided by this section is in addition to any other right or remedy the person may have at law or otherwise.

54. Plaintiff's damages arise from Heitmann and Exigent's misappropriation of trust funds, which constitutes conversion under M.C.L. § 600.2919a.

55. Accordingly, Plaintiff is entitled to treble damages in the amount of $954,672.87.

56. Treble damages are non-dischargeable when the underlying claims prompting the award for treble damages are non-dischargeable.

57. In *Cohen v. De La Cruz*, 523 U.S. 213, 218-19 (1998), the U.S. Supreme Court held that the exceptions to discharge contained in 11 U.S.C. § 523(a)(2)(A) "prevents discharge of 'any debt' respecting 'money, property, services, or . . . credit' that the debtor has fraudulently obtained, *including treble damages assessed on account of fraud*" (emphasis added).

58. A similar analysis follows for 11 U.S.C. § 523(a)(4) claims: "Although §§ 523(a)(4) & (a)(6) were not at issue in *Cohen,* the Supreme Court cited §§ 523(a)(4) & (a)(6) as clear examples of instances in which statutory damages, including attorney's fees, that exceed actual damages would be non-

dischargeable. *Cohen,* 523 U.S. at 219-220." *DirecTV, Inc. v. Karpinsky (In re Karpinsky)*, 328, B.R. 516, 528 (Bankr. E.D. Mich. 2005).

Wherefore, Plaintiff respectfully requests that this honorable Court enter judgment in his favor in the amount of $954,672.87, plus costs, interest, and attorney's fees, and determine that such judgment is non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2) and (a)(4).

Dated:          September 5, 2024          Respectfully Submitted,

**OSIPOV BIGELMAN, P.C.**

/s/     Anthony J. Miller
YULIY OSIPOV (P59486)
ANTHONY J. MILLER (P71505)
Attorneys for Plaintiff
20700 Civic Center Drive, Ste. 420
Southfield, MI 48076
 (248) 663-1800
yo@osbig.com / am@osbig.com