UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

BRANDON HEITMANN,

        Debtor.

_____/

Chapter 13
Case No. 24-41956-MAR
Hon. Mark A. Randon

**CREDITOR MOHAMED SAAD'S**
**<u>MOTION TO DISMISS CASE AND BAR REFILING FOR 2 YEARS</u>**

NOW COMES Mohamed Saad, Creditor, by and through his attorneys, OSIPOV BIGELMAN, P.C., and states as follows for his Motion to Dismiss:

1.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and (b), 28 U.S.C. §§ 157(a) and (b)(1), and 28 U.S.C. § 151.

2.    This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O).

3.    For the reasons set forth in the brief attached hereto, Creditor Mohamed Saad respectfully requests that the Court dismiss this case.

Respectfully submitted,

Dated: November 6, 2024

**OSIPOV BIGELMAN, P.C.**
/s/ Anthony J. Miller
Anthony J. Miller (P71505)
Attorneys for Mohamed Saad
20700 Civic Center Drive, Suite 420
Southfield, MI 48076
248.663.1800
am@osbig.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

BRANDON HEITMANN,

          Debtor.

_____/

Chapter 13
Case No. 24-41956-MAR
Hon. Mark A. Randon

**BRIEF IN SUPPORT OF CREDITOR MOHAMED SAAD'S
MOTION TO DISMISS CASE AND BAR REFILING FOR 2 YEARS**

NOW COMES Mohamed Saad, Creditor, by and through his attorneys, OSIPOV BIGELMAN, P.C., and states as follows for his Brief in Support of his Motion to Dismiss Case:

Brandon Heitmann ("Debtor") filed this case, not in a good-faith effort to reorganize and repay his debts, but to escape the consequences of his fraudulent conduct. Debtor used his company, Exigent Landscaping, LLC ("Exigent") to defraud customers out of millions of dollars. Debtor used Exigent's customers as his own private piggy bank, stealing their money so that he could live the "high life," buying himself a Lamborghini, taking extravagant vacations, and flashing cash on social media.

When his house of cards inevitably began to crumble, Debtor turned to bankruptcy, attempting to "reorganize" in a failed Chapter 11 for Exigent, before commencing this case. Debtor is not an "honest and unfortunate debtor" in need of

a fresh start. He is a serial con artist, attempting to use this case to absolve him from the damage done by his dishonest enterprise.

## RELEVANT BACKGROUND

Debtor commenced this case by filing a petition for Chapter 13 bankruptcy relief on February 29, 2024 ("Petition Date").

Before commencing this case, Debtor was the president and the sole and managing member of Exigent, a company whose primary business, since 2020, was the design and installation of custom swimming pools. Debtor was responsible for Exigent's operation and management, including the negotiation of customer contracts, payment of invoices, collection of accounts receivable, payment of subcontractors and vendors, and allocation of customer's trust funds. Debtor had sole control and authority over Exigent's bank account and was the sole person with check-signing authority.

A residential builder's license is required to engage in such work in Michigan, pursuant to M.C.L. § 339.2401, *et. seq.* Michigan law also requires contractors to include their residential builder's license information as a part of their contracts with their customers. M.C.L. § 339.2404a. However, despite designing and installing swimming pools since 2020, neither Debtor nor anyone employed by Exigent held a valid builder's license until March 2023.

Despite not holding a valid license, Debtor caused Exigent to print "License

#: 802082183" at the bottom of its contracts. The number "802082183" is not a license number of any kind. Rather, it appears to be the "Identification Number," assigned to Exigent by the Michigan Department of Licensing and Regulatory Affairs upon Exigent's registration as a limited liability company. Debtor included this number on Exigent's form contracts to deceive customers into believing that Exigent was properly licensed.[1]

Under this false "license number," Debtor induced many homeowners to sign contracts and pay large sums of money to Exigent. However, after getting paid, the work the Debtor and Exigent performed (when they performed at all) was extraordinarily poor and even dangerous.[2]

Meanwhile, Debtor used the money he generated through Exigent to support a lavish lifestyle. He bought himself a Lamborghini. He bought a new house in Macomb. He started a social media channel, championing his "Heitmann Academy" entrepreneur-coaching service, showing off his ill-gotten gains, flashing his customers' cash, flying on private jets, and going on exotic vacations.

Back at home, the defrauded homeowners were beginning to realize that their money had been frittered away, and that Debtor and Exigent were entirely unable to

---

[1] Including Creditor Saad, as described in Saad's Complaint, Adv. Proc. No. 24-04375-mar, ECF No. 1.
[2] Debtor defrauded so many homeowners that he was *twice* featured on Fox 2's "Hall of Shame."
https://www.fox2detroit.com/news/bad-pool-builder-dives-in-hits-rock-bottom
https://www.fox2detroit.com/news/bad-pool-builder-and-his-attorney-face-flood-of-legal-trouble

honor the terms of their contracts. The pressure on the Debtor and Exigent began to mount. Homeowners discovered that Debtor and Exigent had misrepresented their status as licensed builders. Several homeowners filed lawsuits, and Debtor was arrested and charged with false pretenses and misuse of builder's trust funds.

On August 7, 2023, Debtor caused Exigent to file a voluntary Chapter 11 bankruptcy petition, commencing Case No. 23-46912-tjt, with Debtor signing the pleadings and acting as the responsible person for Exigent. Debtor's pleadings in Exigent's Chapter 11 case were frequently untimely and contained material misrepresentations. Several parties opposed confirmation of Exigent's Chapter 11 plan, and the United States Trustee moved for the case be converted to Chapter 7, citing (a) Debtor's gross mismanagement, (b) Debtor's failure to account for customer's money, and (c) Debtor's failure to justify or account for money he took from the business, including approximately $175,000.00 Debtor withdrew from Exigent's accounts months before it filed Chapter 11.[3] Seeing the writing on the wall, Debtor pivoted Exigent's strategy and, instead of reorganizing, sought to sell Exigent's assets *to Debtor's wife*, for a price that, as Judge Tucker described it, "on its face appears to be extremely low."[4]

---

[3] This money is similarly unaccounted for in the Debtor's present case. It appears nowhere on his Statement of Financial Affairs, where he falsely reports earning less than $26,000.00 in all of 2023.
[4] Opinion Regarding US Trustee's Motion to Convert, Case No. 23-46912-tjt, ECF No. 151, page 27.

On February 12, 2024, Judge Tucker granted the US Trustee's motion and converted Exigent's Chapter 11 bankruptcy case to Chapter 7. On February 29, 2024, Debtor filed this Chapter 13 case. Debtor now claims to be employed by his wife's company, Resilient Outdoor Living, LLC, which was formed about a week after Exigent's conversion and a week prior to the Debtor's Chapter 13 petition, operates in the same industry as Exigent, and whose customers consist substantially of former customers of Exigent.

Debtor's schedules in this case are riddled with omissions and dishonesty. He failed to accurately schedule his creditors, in an attempt to manipulate the Chapter 13 debt limit. He failed to disclose his pre-petition income. He did not account and explain what he did with the customer funds he misappropriated. He did not honestly report his household income and expenses. He failed to disclose potentially preferential settlements paid to some of Exigent's customers on the eve of bankruptcy (and apparently during the pendency of Exigent's bankruptcy case, without bankruptcy court knowledge or approval). He now proposes, in his Chapter 13 plan, to discharge the claims of the homeowners he defrauded, while paying them a dividend of less than one-half of one percent.

Debtor does not qualify for Chapter 13. He lacked good faith when filing the present case, and he will never be able to submit a Chapter 13 plan which this Court could confirm. Accordingly, this case should be dismissed.

## ARGUMENT

The Court should dismiss this case because (a) despite Debtor's inaccurate scheduling of claims, he is over the debt limit for Chapter 13 and (b) Debtor's pre- and post-petition conduct, together with his inaccurate and dishonest schedules, constitute cause to dismiss pursuant to 11 U.S.C. § 1307(a).

### Debtor Exceeds the Debt Limit for Chapter 13

The Bankruptcy Threshold Adjustment and Technical Corrections Act of 2022 ("BTATCA") temporarily altered the Chapter 13 "debt-limit" contained in 11 U.S.C. § 109(e), making Chapter 13 available to individuals with noncontingent, liquidated debts of less than $2,750,000.00. Though the BTATCA has since expired, the Debtor filed this case before such expiration, so the BTATCA limits apply in this case. The Debtor manipulated the claims listed on his Schedule E/F in an artificial attempt to stay below the Chapter 13 "debt limit."

The Debtor scheduled debts totaling $2,526,222.91. However, Debtor improperly scheduled several claims. Debtor underestimated several claims, when compared with claims filed by such creditors. Several creditors are inexplicably listed with claims of "$0.00" or "Unknown." Debtor improperly identified the amount that he owes to defrauded homeowners as zero. Some such homeowners have filed claims, in substantial amounts. The claims filed in this case total $3,632,604.44. By the filed claims alone, **Debtor is at least $882,604.44 over the**

**debt limit**. Debtor does not qualify for Chapter 13, even under the enhanced limits of the BTATCA.

Debtor may argue that the debts were disputed when he filed his petition, and he therefore listed them on his Schedule E/F as having no value. However, the claims in this case were filed *over five months ago* (with the singular exception of Saad's claim, which was filed over two months ago). Debtor has not objected to *any* creditors' proof of claim in this case.

### Debtor Did Not File This Case in Good Faith

Even if the Debtor did qualify for Chapter 13 relief under the debt limit, the Court should dismiss this case for cause, due to the Debtor's pre- and post-petition bad faith conduct. 11 U.S.C. § 1307 provides that, upon request of a party in interest, the court may, for cause, dismiss or convert a chapter 13 case, whichever is in the best interests of creditors and the estate. In the present case, cause exists to dismiss the Debtor's Chapter 13 bankruptcy.

### *Undisclosed Income*

According to Debtor's Statement of Financial Affairs, his gross income for 2022 was $82,692.44 and his gross income for 2023 was $25,969.13. Upon information and belief, these numbers are extraordinarily low. Throughout 2022 and much of 2023, Debtor boasted of his wealth routinely on social media. He made

mortgage payments of $5,400.00 per month.[5] He paid for several vehicles, including a 2019 GMC 2500 truck ($640.00/month), a 2017 Audi RS7 ($1,408.39/month)[6], a 2021 Lamborghini Urus,[7] and his wife's 2020 Mercedes ($1,629.10/month).[8]

These installment payments alone total $9,077.49 per month, and do not include ordinarily living expenses, let alone the cost of Debtor's lavish lifestyle. And yet Debtor would have this Court believe that he earned only $6,891.04 (gross) per month in 2022 and $2,164.10 (gross) per month in 2023. Where is the missing money? Debtor has failed to disclose or account (to the Court or to the Internal Revenue Service) for the money he stole from Exigent's customers. In its Motion to Covert Exigent's Chapter 11 case to Chapter 7, the US Trustee detailed **$173,508.00** that Debtor withdrew from Exigent's bank account **between April 13, 2023 and July 24, 2023 alone**.[9] Debtor failed to disclose or account for this income in this case, in a bad-faith attempt to mischaracterize his financial condition and persuade the Court to confirm a plan that pays effectively nothing to creditors.

### *False Reporting of Income and Expenses*

Debtor's (amended) Schedule I (ECF No. 64) purports to project his monthly income "using average monthly gross income for May, June, and July 2024 to

---

[5] See attached Exhibit A, 2004 examination testimony of Debtor, page 9.
[6] See Proof of Claim No. 8.
[7] See Exhibit A, page 92.
[8] See Exhibit A, page 102.
[9] Case No. 23-46912-tjt, ECF No. 91, page 5.

determine projected income for Debtor and Spouse." Debtor testified that he is a salaried employee of his wife's company, Resilient Outdoor Living, LLC.[10] Indeed, Debtor's Amended Schedule I appears to include payroll deductions from his and his wife's income consistent with salaried, W2 employment.

The Schedule also indicates that Debtor's wife earns $665.00 per month from operation of "her" business. There are several problems with this "projection." First, it is improper to project income over the Debtor's entire 60-month plan period based upon the amount generated by a start-up in the first four months of its existence. Second, the Debtor has failed to provide records to substantiate the business's claimed income and expenses. Third, even assuming the stated income and expenses are accurate, Debtor failed to include the "Owner's Draw" in the amount of $1,645.13 per month in his Schedule I income. Fourth, the Debtor testified that Resilient pays 60% of his wife's vehicle lease (approximately $1,000.00 per month),[11] yet this payment does not appear in the Debtor's projections.

In short, the Debtor's statements about his monthly income and expenses have not been verified, and the Debtor has repeatedly demonstrated that his reporting of his income and expenses cannot be trusted. Under these circumstances, Debtor cannot conceivably hope to confirm a Chapter 13 plan.

---

[10] See Exhibit A, pages 95-96.
[11] See Exhibit A, page 102.

### *Undisclosed Transfers*

Prior to commencing this case, several defrauded homeowners filed lawsuits against the Debtor and Exigent. In February 2024, presumably immediately before filing this case and while Exigent's bankruptcy was pending, Debtor entered into settlements with at least two such homeowners, Joe Regalado ("Regalado") and Joe and Angela Hebeka ("Hebeka").[12] Debtor did not disclose these settlements on his Statement of Financial Affairs, and did not disclose whether or not Regalado or Hebeka received any money as part of the settlements. When questioned about these settlements at his 2004 examination, Debtor refused to answer, claiming that the settlements were covered by confidentiality agreements. Though the settlements presumably involved claims against Exigent's estate as well as against the Debtor, no approval was sought or obtained from Exigent's bankruptcy court.

Given the nature of Regalado's and Hebeka's claims, it is very likely that the Debtor paid money as a part of any settlement. Such payments would almost certainly constitute preferential transfers, which should be avoided for the benefit of the estate. However, on his Statement of Financial Affairs, Debtor claims to have made no payments to creditors in the 90 days prior to the Petition Date. Given Debtor's refusal to answer questions regarding the Regalado and Hebeka settlements, it is impossible to determine the veracity of Debtor's Statement of

---

[12] See Exhibit A, pages 165-68, 171-73.

Financial Affairs or to determine whether avoidable transfers occurred, and in what amount. Under such circumstances, Debtor's proposed Plan cannot possibly satisfy 11 U.S.C. § 1325(a)(4). Where the Debtor refuses to provide information necessary to determine whether his plan meets the criteria for confirmation, he has not proposed the plan in good faith, in violation of 11 U.S.C. § 1325(a)(7).

### *Debtor's Pre- and Post-Petition Conduct Constitutes Case to Dismiss*

11 U.S.C. § 1307(c) states that a court may dismiss a Chapter 13 case "for cause," and lists several examples of circumstances that would constitute such cause. Importantly, the "for cause" list is not exhaustive:

> In addition, the statute's list of 11 examples of what constitutes cause to dismiss a case is not exclusive. *See Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 373, 127 S. Ct. 1105, 166 L. Ed. 2d 956 (2007). The filing of a bankruptcy case in bad faith also is considered "cause" to dismiss a case under § 1307(c). *Alt v. United States* (*In re Alt*), 305 F.3d 413, 418-19 (6th Cir.2002)("[T]here is abundant authority for the notion that a bankruptcy court has the power to dismiss a Chapter 13 petition upon a finding that the debtor did not bring it in good faith.").

> The Sixth Circuit has "announced standards for bankruptcy courts to follow in determining the debtor's good faith." *Alt*, 305 F.3d at 419 (italics omitted). A determination of "good faith is a fact-specific and flexible determination" which "requires consideration of the totality of circumstances." *Copper v. Copper* (*In re Copper*), 426 F.3d 810, 815 (6th Cir. 2005)(citations omitted). "Under the totality of the circumstances test, [courts] analyze both the prior conduct of the bankruptcy petitioner and the petitioner's present circumstances." *Society Nat'l Bank v. Barrett* (*In re Barrett*), 964 F.2d 588, 590 (6th Cir. 1992).

The *Alt* court also noted that "[i]n considering whether a petition has been brought in good faith, other circuits have recognized factors similar to those relevant in determining whether a plan has been proposed in good faith." *Alt*, 305 F.3d at 419. The Sixth Circuit listed twelve "circumstances to be considered in determining whether a plan has been proposed in good faith":

> (1) the debtor's income;
> (2) the debtor's living expenses;
> (3) the debtor's attorney's fees;
> (4) the expected duration of the Chapter 13 plan;
> (5) the sincerity with which the debtor has petitioned for relief under Chapter 13;
> (6) the debtor's potential for future earning;
> (7) any special circumstances, such as unusually high medical expenses;
> (8) the frequency with which the debtor has sought relief before in bankruptcy;
> (9) the circumstances under which the debt was incurred;
> (10) the amount of payment offered by debtor as indicative of the debtor's sincerity to repay the debt;
> (11) the burden which administration would place on the trustee;
> (12) the statutorily-mandated policy that bankruptcy provisions be construed liberally in favor of the debtor.

305 F.3d at 419 (citing *Society Nat'l Bank v. Barrett* (*In re Barrett*), 964 F.2d 588, 592 (6th Cir. 1992)).

In considering such a list of factors, however, the Court must keep in mind that:

> no list is exhaustive of all the conceivable factors which could be relevant when analyzing a particular debtor's good faith. It would be impossible to provide such a list and we have not attempted to do so. We also stress that no one factor should be viewed as being a dispositive indication of the debtor's good faith. We agree with the Fifth Circuit that "[t]he 'totality of the circumstances' test

> means what it says: It exacts an examination of all the facts
> in order to determine the bona fides of the debtor."

*Hardin v. Caldwell* (*In re Caldwell*), 851 F.2d 852, 860 (6th Cir. 1988)(citing *In re Chaffin*, 816 F.2d 1070, 1074 (5th Cir. 1987).

*In re Mehlhose*, 469 BR 694, 707-08 (Bankr ED Mich, 2012).

The court in *In re Gomery*, 523 B.R. 773, 785 (Bankr. W.D. Mich. 2015) highlighted "the absolute requirement that chapter 13 debtors be 'honest, forthcoming, truthful, and frank' with the bankruptcy court, the Trustee, and the creditors. *See In re Alt*, 305 F.3d at 421. In exchange for bankruptcy relief, debtors have an affirmative duty to accurately disclose their assets and liabilities and to account for their financial transactions."

The Debtor has not been "honest, forthcoming, truthful, and frank." He has concealed and misrepresented his financial affairs. He has dishonestly failed to accurately disclose his assets and liabilities. He has failed to account for his financial transactions, and the money he took from Exigent and its customers.

The *Alt* factors all weigh heavily against the Debtor:

(1) The Debtor's income is disingenuously and inadequately reported, and appears insufficient to support a Chapter 13 plan;

(2) The Debtor's expenses (including Resilient's business expenses) are disingenuously and inadequately reported, without any support;

(3) The Debtor has already paid a $15,000.00 retainer to his counsel in this case. Debtor's Second Amended Chapter 13 Plan claims that his attorney will file an application for additional fees, but the plan worksheet makes no allowance for *any* pre- or post-confirmation attorney fees. More troubling, the Debtor has recently sought to employ *another* attorney to represent him in an adversary proceeding pending before this Court and in two cases pending in state court. Debtor has not explained how this additional counsel would be paid without adversely impacting his plan.

(4) The Debtor has proposed a 60-month plan – during which time he proposes to pay creditors a dividend of less than one-half of one percent. This is an extraordinarily long time to make creditors wait for extraordinarily little return.

(5) The Debtor's lack of sincerity is demonstrated by his refusal to accurately schedule his creditors, to disclose and account for his financial affairs, to honestly and accurately describe his income and expenses, to provide information necessary to evaluate his plan, or to provide anything close to a reasonable dividend to creditors.

(6) The Debtor's potential for future earning is unknown. However, the Debtor has disingenuously based his 60-month projected income on the

supposed earnings generated by a start-up company in the first four months of its existence.

(7) Special circumstances here weigh against the Debtor: he is seeking to discharge over $3 million in liabilities – well in excess of the debt limit. Meanwhile, he intends to continue paying his wife's obligations, including over $1,600.00 per month for his wife's Mercedes, while paying his creditors, whom he defrauded, next to nothing.

(8) While this is the Debtor's first filing in his individual capacity, he first attempted to avoid the consequences of his fraudulent conduct by attempting to "reorganize" Exigent in a doomed Chapter 11. When that failed, he turned to the present Chapter 13.

(9) The circumstances under which the Debtor incurred his debts is highly relevant in this case. He used his company to defraud homeowners out of millions. He failed to pay his subcontractors. Instead of using the ill-gotten funds to pay contractors and complete the jobs he signed up for, he bought himself a large home. He bought luxury sports cars. He flew to exotic locations on private planes. He bragged on social media about his "success" and the money he was making. He now seeks to use this Court to obtain a "fresh start" and leave those he defrauded with no recourse.

(10) Debtor's proposed plan payment is so de minimis as to be insulting, particularly in light of the manner in which the debt was incurred. Debtor's plan does not show a sincere intention to repay his debt. Allowing the Debtor to proceed to discharge in this case would be a miscarriage of justice and a disrespect to Debtor's victims.

(11) This case has already inordinately burdened the Trustee and creditors. The Debtor's schedules and statements are dishonest and inaccurate, and have not been properly amended. Debtor has failed to provide sufficient information to evaluate his plan. Meanwhile, Debtor has already amended his proposed plan *twice*, and is no closer to confirmation, nearly 9 months after this case was filed.

(12) While the Bankruptcy Code should be construed "liberally in favor of the debtor," there are limits, and "denying a discharge to the dishonest debtor is consistent with bankruptcy policy." *Phoenix Fin Solutions, Inc v Williams (In re Willams)*, 2015 Bankr LEXIS 294, at *5 (Bankr. N.D. Ohio, Jan. 30, 2015) (citing *Marrama*). Where, as here, the Debtor has not filed the case or proposed a plan in good faith, his case should not be permitted to proceed.

Considering the totality of the circumstances, Debtor lacked good faith in filing his present Chapter 13 case. Debtor filed the present case after defrauding

several homeowners out of millions of dollars, failing to pay contractors or honor contracts while using the stolen money to live a life of luxury. He tried to use Chapter 11 to evade the consequences of his fraudulent conduct. When that failed, he now seeks a Chapter 13 discharge. Debtor's schedules were filed under penalty of perjury yet contain several material omissions and errors. Debtor has not been forthright with the Trustee, the Court, or his creditors.

Dismissal, rather than conversion, is in the best interests of creditors. Debtor should not be entitled to seek a discharge in Chapter 7 or Chapter 13. Debtor executed a broad plan to defraud his customers and his subcontractors. He selectively scheduled his creditors, omitting any that would put him over the Chapter 13 limit. He failed to account for his past income, failed to accurately describe his current financial affairs, and failed to disclose claims that could benefit the bankruptcy estate. He proposed a Chapter 13 Plan that would pay his defrauded creditors less than one-half of one percent. Debtor did not file this case and his Chapter 13 Plan in a good-faith effort to reorganize his financial affairs and address his creditors. He is attempting to abuse the system to escape the consequences of his fraudulent schemes.

## Bar on Refiling

This case should be dismissed, and, under the circumstances, the Court should impose a bar on refiling for at least 2 years.

Under 11 U.S.C. §§ 105(a) and 349(a), a bankruptcy court has the power to bar filings for longer than the 180-day prohibition specified in § 109(g). *See Dietrich v. Nob-Hill Stadium Props.*, No. 05-2255, 2007 U.S. App. LEXIS 3591, 2007 WL 579547, at *5 (6th Cir. Feb. 15, 2007). "A bankruptcy court's finding of bad faith, or an abuse of the bankruptcy process, particularly in the case of serial filers, is generally considered sufficient cause to impose a bar to refiling for more than 180 days." *In re Mehlhose*, 469 B.R. 694, 712 (Bankr. E.D. Mich. 2012); *see also Dietrich*, 2007 U.S. App. LEXIS 3591, 2007 WL 579547, at *5 (holding that a debtor's fourth case in three years supported a permanent filing ban).

*Riddle v Greenberger (In re Riddle)*, 2022 U.S. App. LEXIS 31723, at *6-7 (6th Cir., Nov. 16, 2022). Here, where Debtor has repeatedly demonstrated an intention and willingness to abuse the bankruptcy system to avoid the consequences of his fraudulent conduct, the Court should impose a 2-year bar on refiling, to prevent further abuse.

WHEREFORE, Creditor Mohamed Saad respectfully requests that his Court enter an Order dismissing the above-captioned case with a bar to refiling and granting such other relief as this Court deems just and proper.

Respectfully submitted,

Dated: November 6, 2024

OSIPOV BIGELMAN, P.C.

/s/ Anthony J. Miller
Anthony J. Miller (P71505)
Attorneys for Mohamed Saad
20700 Civic Center Drive, Suite 420
Southfield, MI 48076
248.663.1800
am@osbig.com

**EXHIBIT 1**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re:

|  |  |
|---|---|
| | Chapter 13 |
| BRANDON HEITMANN, | Case No. 24-41956-MAR |
| | Hon. Mark A. Randon |
| Debtor. | |
| _____/ | |

[proposed]
**<u>ORDER DISMISSING CASE AND BARRING REFILING FOR 2 YEARS</u>**

This matter having come to be heard upon the Creditor, Mohamed Saad's
Motion to Dismiss and Bar Refiling, notice having been duly given and an
opportunity for hearing having been provided, and based upon the records of the
court herein, the Court finds that the relief requested is warranted, and the Court
being otherwise sufficiently advised in the premises;

**IT IS HEREBY ORDERED** that this case is dismissed, effective
immediately.

**IT IS FURTHER ORDERED** that Debtor is barred from initiating a new
bankruptcy case, under any chapter of the Bankruptcy Code, for 2 years following
the date of entry of this Order.

**EXHIBIT 2**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re:

|   |   |
|---|---|
| | Chapter 13 |
| BRANDON HEITMANN, | Case No. 24-41956-MAR |
| | Hon. Mark A. Randon |
| Debtor. | |

_____/

**NOTICE OF AND OPPORTUNITY TO OBJECT TO**
**CREDITOR MOHAMED SAAD'S**
**MOTION TO DISMISS CASE AND BAR REFILING**

Creditor Mohamed Saad has filed papers with the court to dismiss the above-captioned case and bar refiling for 2 years.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult with one.)**

If you do not want the Court to grant the motion, or if you want the Court to consider your views on the motion, within twenty-one (21) days from the date of service of the motion, you or your attorney must:

1. File with the court a written response or an answer, explaining your position at: [1]

**United States Bankruptcy Court**
**211 W. Fort Street, Suite 2100**
**Detroit, MI 48226**

If you mail your response to the court for filing, you must mail it early enough so the court will **receive** it on or before the date stated above. All attorneys are required to file pleadings electronically.

_____
[1] Response or answer must comply with F.R.Civ.P.8(b), (c) and (e)

You must also send a copy to:

**OSIPOV BIGELMAN, P.C.**
**Attn: Anthony J. Miller, Esq.**
**20700 Civic Center Drive, Suite 420**
**Southfield, MI 48076**

2.      If a response or answer is timely filed and served, the clerk will schedule a hearing on the Motion and you will be served with a notice of the date, time and location of the hearing.

**If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion and may enter an order granting that relief.**

Respectfully submitted,

Dated: November 6, 2024                    OSIPOV BIGELMAN, P.C.

/s/ Anthony J. Miller
Anthony J. Miller (P71505)
Attorneys for Mohamed Saad
20700 Civic Center Drive, Suite 420
Southfield, MI 48076
248.663.1800
am@osbig.com

In re:

|  |  |
|---|---|
|  | Chapter 13 |
| BRANDON HEITMANN, | Case No. 24-41956-MAR |
|  | Hon. Mark A. Randon |
| Debtor. |  |

_____/

## <u>CERTIFICATE OF SERVICE</u>

*Re:    Motion to Dismiss and Bar Refiling, Brief in Support, Proposed Order, Notice and Opportunity to Respond, Certificate of Service*

I hereby certify that on November 6, 2024, I electronically filed the above-referenced documents with the Clerk of the Court using the ECF system which will send notification of such filing to the Office of the United States Trustee and all those listed by the court as receiving electronic notices in this case from the court's CM/ECF system.

I also certify that on November 6, 2024, I served a copy of the foregoing documents by First Class Mail, with sufficient prepaid postage, to the following:

Brandon Heitmann
60749 Forest Creek Drive
Washington Township, MI 48094

Respectfully submitted,

Dated: November 6, 2024

OSIPOV BIGELMAN, P.C.

/s/ Anthony J. Miller
Anthony J. Miller (P71505)
Attorneys for Mohamed Saad
20700 Civic Center Drive, Suite 420
Southfield, MI 48076
248.663.1800
am@osbig.com