UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

In re:

BRANDON HEITMANN,

      Debtor.
_____/

Chapter 13
Case No. 24-41956-MAR
Hon. Mark A. Randon

## OBJECTIONS TO CONFIRMATION OF CHAPTER 13 PLAN

Now comes secured creditor, Mohamed Saad, ("Creditor") by and though his Counsel, Osipov Bigelman, P.C. and hereby objects to confirmation of the Debtor's Proposed Chapter 13 Plan as follows:

1. Creditor has filed a Motion to Dismiss (ECF No. 106) and a Complaint objecting to Debtor's discharge (Adv. Proc. No. 24-04375-mar) detailing Debtor's bad faith and fraudulent conduct. Such pleadings are incorporated herein by reference and demonstrate Debtor's failure to propose a plan in good faith, in violation of 11 U.S.C. § 1325(a)(3).

2. Upon information and belief, the Debtor has failed to file all applicable Federal, State, and local tax returns in violation of 11 U.S.C. §§ 1308 and 1325(a)(9) (*see Notice of Unfiled Tax Returns*, filed by the State of Michigan at ECF No. 18).

3. The Debtor's actions in filing the petition and schedules in this case lack the requisite good faith as required by 11 U.S.C. §1325(a)(7). A determination of the Debtor's good faith requires a close inquiry into the debtor's pre-plan conduct

and the total circumstances under which the debtor contracted his debts and his demonstrated bona fide attempt to deal with his creditors. *In Re Okoreeh-Baah*, 836 F2d 1030 (6th Cir. 1988). A non-exhaustive list of factors includes (a) the debtor's employment history, ability to earn and likelihood of a future increase in income; (b) the accuracy of the plan's statements of the debts, expenses and percentage of unsecured debt and whether any inaccuracies are an attempt to mislead the court; (c) the extent of preferential treatment between classes of creditors; (d) whether any such debt is nondischargeable; (e) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and (f) whether the debtor is attempting to abuse the spirit of the Bankruptcy Code. *Hardin v. Caldwell (In re Caldwell)*, 895 F.3d 1123, 1126-27 (6th Cir. 1990).

4. The Debtor's lack of good faith is evidenced by the failure to provide all disposable income pursuant to 11 U.S.C. § 1325(a)(3) and (b)(1) where the calculation of debtor's best efforts are supported by deliberate and obvious attempts to obscure the household income, as evidenced by inconsistent schedules I and J that demonstrate a lack of verifiable income attributable to the Debtor and fails to support the proposed plan that is infeasible in violation of 11 U.S.C. §1325(a)(6). Debtor claims to be employed by Resilient Outdoor Living ("Resilient"), a start-up company ostensibly owned by his wife. Resilient was created about a week after the Debtor's previous company, Exigent Landscaping Services, LLC ("Exigent"), had its Chapter

11 bankruptcy case (Case No. 23-46912-tjt) converted to Chapter 7. Creditor notes that Resilient offers the same services, has the same employees, and has the same customers as Exigent. Debtor appears to have transferred Exigent's remaining business to his wife, an insider, without compensation to Exigent's estate.

On August 7, 2024 (ECF No. 64), the debtor filed Amended Schedules I and J that reflect that he and his wife earn $2,887.11 per month from Resilient, including their respective salaries and profits allegedly generated the company, as detailed in an attached itemization of income and expenses. Creditor requests documentation of the W2 income earned by the Debtor and his wife. Creditor also requests documents (including all financial records) evidencing Resilient's alleged income and expenses. Notably, the alleged expenses include an "Owner's Draw" of $1,645.13 not indicated as income on Debtor's Schedule I.

5. Even assuming Debtor's, his wife's, and Resilient's incomes are accurately reported, Creditor objects to Debtor projecting his income for the 60-month commitment period of the plan based upon the first four months' income generated by a new start-up company.

6. Creditor requests tax returns, bank statements, and cryptocurrency transaction histories for the last 12 months for the Debtor, the Debtor's wife, and Resilient, to verify Debtor's alleged income and expenses and ability to perform under a confirmed plan.

7. Debtor's Schedule A/B lists "claims for affirmative relief and offset in the various lawsuits filed, and potential tort claims against third parties" in an "Unknown" amount. However, Debtor's Plan fails to commit the proceeds of any such claims to the plan.

8. Debtor has not paid his mortgage in over a year, and his plan indicates a treatment of the mortgage creditor and the associated claim in Class 5.5. of the Plan where "surrendered" property is generally treated. Limiting, cryptic language with respect to the extent of the surrender and a lack of opposition to relief from the automatic stay is included. Debtor's schedule J, then, does not include a line item or anticipated budget for payment of any rental or home ownership expense. The Debtor will presumably have a home ownership expense once he surrenders his residence, which will render his plan infeasible.

9. Creditor objects to Debtor's failure to disclose substantial prepetition income on his schedules or on his Statement of Financial Affairs, including hundreds of thousands of dollars withdrawn from Exigent Landscaping Services, LLC's bank account. Creditor objects to Debtor's failure to account for the disposition of such income.

10. Creditor objects to Debtor's failure to disclose the prepetition settlement of claims with creditors Regalado and Hebeka, and to Debtor's failure to disclose whether or not Regalado or Hebeka received any money as part of the

settlements. When questioned about these settlements at his 2004 examination, Debtor refused to answer, claiming that the settlements were covered by confidentiality agreements. Given the nature of Regalado's and Hebeka's claims, it is very likely that the Debtor paid money as a part of any settlement. Such payments would almost certainly constitute preferential transfers, which should be avoided for the benefit of the estate. However, on his Statement of Financial Affairs, Debtor claims to have made no payments to creditors in the 90 days prior to the Petition Date. Debtor's Plan does not include or account for any avoidance claims, which would be available to creditors in a Chapter 7. Given Debtor's refusal to answer questions regarding the Regalado and Hebeka settlements, it is impossible to determine the veracity of Debtor's Statement of Financial Affairs or to determine whether avoidable transfers occurred, and in what amount. Under such circumstances, Debtor's proposed Plan cannot possibly satisfy 11 U.S.C. § 1325(a)(4). Where the Debtor refuses to provide information necessary to determine whether his plan meets the criteria for confirmation, he has not proposed the plan in good faith, in violation of 11 U.S.C. § 1325(a)(7).

11. Debtor's Plan indicates that his counsel will file an application for attorney's fees. However, the Debtor's Plan worksheet includes no amount for any pre- or post-confirmation attorney's fees. More troubling, the Debtor has recently sought to employ *another* attorney to represent him in an adversary proceeding

pending before this Court and in two cases pending in state court. Debtor has not explained how this additional counsel would be paid without adversely impacting his plan. Assuming his attorneys will want to be paid, Debtor's failure to account for such payments renders his plan infeasible.

12. Creditor objects to the debtor's lack of good faith:

    a. In failing to honestly, accurately and in good faith disclose all liabilities, income, and transfers;

    b. In proposing a plan for which the debtor has not provided all of his disposable income pursuant to 11 U.S.C. §1325(a)(3) and §1325(b)(1).

    c. In that the purpose of this case is to avoid the consequences of Debtor's fraudulent conduct. Debtor's plan lacks good faith where the primary purpose is avoid liability for his dishonest conduct.

    d. When considering the Debtor's income and expenses; the lack of sincerity with which Debtor has sought relief; the circumstances under which the debt was incurred; the payment offered by Debtor as indicative of sincerity to repay creditors; the timing of the Petition; Debtor's motive in commencing the case, and whether Debtor has been forthcoming with the Court and

Creditors. *See In re Walker,* 2020 Bankr. LEXIS 890 at *38-39 (Bankr. E.D. Tenn. 2020).

13. Debtor does not qualify for Chapter 13 relief pursuant to 11 U.S.C. § 109(e), as indicated by the filed claims in this case (to which Debtor has not objected), which total $3,632,604.44.

14. Creditor reserves the right to supplement or amend its objections to confirmation upon review of the materials identified herein.

WHEREFORE, Creditor requests that this Court deny confirmation of Debtor's Chapter 13 Plan, or the case be dismissed or converted pursuant to 11 U.S.C. §§ 1307(c)(5), 1322(a)(1), and 1325(a)(1), (3), (4), (6) and (7).

Respectfully submitted,

Dated: November 6, 2024                OSIPOV BIGELMAN, P.C.

/s/ Anthony J. Miller
Anthony J. Miller (P71505)
Attorneys for Mohamed Saad
20700 Civic Center Drive, Suite 420
Southfield, MI 48076
248.663.1800
am@osbig.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

In re:

BRANDON HEITMANN,

      Debtor.
_____/

Chapter 13
Case No. 24-41956-MAR
Hon. Mark A. Randon

## CERTIFICATE OF SERVICE

*Re:   Objections to Confirmation of Chapter 13 Plan*

    I hereby certify that on November 6, 2024, I electronically filed the above-referenced document with the Clerk of the Court using the ECF system which will send notification of such filing to the Office of the United States Trustee and all those listed by the court as receiving electronic notices in this case from the court's CM/ECF system.

    I also certify that on November 6, 2024, I served a copy of the *Objections to Confirmation of Chapter 13 Plan* by First Class Mail, with sufficient prepaid postage, to the following:

Brandon Heitmann
60749 Forest Creek Drive
Washington Township, MI 48094

                         Respectfully submitted,

Dated: November 6, 2024              OSIPOV BIGELMAN, P.C.

                         /s/ Anthony J. Miller
                         Anthony J. Miller (P71505)
                         Attorneys for Mohamed Saad
                         20700 Civic Center Drive, Suite 420
                         Southfield, MI 48076
                         248.663.1800
                         am@osbig.com