UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                    Chapter 13
                                          Case No. 24-41956
Brandon Heitmann,                         Hon. Mark A. Randon
                        Debtor.
_____/

## FURTHER DEBTOR'S OBJECTION TO
## CREDITOR MOHAMED SAAD'S MOTION TO DISMISS

Debtor states,

**I. Summary**

Pursuant to this Court's December 19, 2024 ORDER DENYING IN PART

CREDITOR'S MOTION TO DISMISS [ECF 130],

> The Court takes Creditor's argument that Debtor is not eligible to file a Chapter 13
> bankruptcy because his debts exceed the debt limit under 11 U.S.C. § 109(e) under advisement.
> On or before *January 6, 2025*, Debtor must file an exhibit that explains each debt valued at
> $0.00 or listed as unknown on Schedule E/F. Creditor has until *January 20, 2025*, to file any
> objection to the exhibit.

Attached is a spreadsheet with notes as to each claim listed by Debtor on his

original schedule E/F [and D] that explains the basis for ascribing the indicated

amounts. As this Court will see, as a general matter, there are 5 buckets of claims

that were scheduled by Debtor Brandon Heitmann. The treatment for each bucket

follows.

**Bucket 1 [the "Exigent CYA claims"]:**

This bucket is made up of potential claims that Debtor did not believe he had

any personal liability on because he believed they were obligations only of his wholly owned company, Exigent Landscaping, LLC, Chapter 7 Case No. 23-46912-TJT. These claims were primarily listed as zero or unknown for the amount of the debt because Debtor did not believe he had any personal liability on these potential claims but wanted to give the potential claimants notice so as to maximize the scope of the discharge Debtor would be getting and give the potential claimants an ability to govern themselves accordingly. Debtor has owned Exigent since 2017, was the responsible person for Exigent's chapter 11 filing, and reviewed proofs of claim in the Exigent bankruptcy and prepared Debtor's schedules with the assistance of Exigent's counsel and others with financial knowledge of Exigent's operations.

As Judge Shapero noted, listing corporate debts in an individual bankruptcy is a common practice in this District as he noted in In re Odette, 347 B.R. 60, 63 (Bankr. E.D. Mich. 2006). In that case, the debtor was a contractor who operated out of a related non-debtor entity that had ceased operating, and sought to convert to a chapter 13 case, which was opposed by creditors based on the debt limitations. See In re Odette, 347 B.R. 60, 63 (Bankr. E.D. Mich. 2006)[1]. Furthermore, scheduling claims as "unknown" where a debtor does not believe that there is any

---

[1] In re Odette, 347 B.R. 60, 63 (Bankr. E.D. Mich. 2006)("It is worth noting that it is not unusual for shareholder(s) or members or partners of relatively small corporate or limited liability type entities who individually file for bankruptcy (and their often defunct entities do not) to list on their bankruptcy schedules, in addition to their own clearly individual debts, the outstanding debts of those entities — at least those which they have not by binding agreement specifically individually guaranteed and which thus, by contract, have become individual liabilities. Presumably, they are counseled to do so out of caution and/or an understandable concern they might actually be or be held to be individually liable for those debts and they desire to discharge such liability through the individual bankruptcy. ").

personal liability for a corporate debt appears common in other jurisdictions as well, in addition to situations where a claim is unliquidated. [2]

In any event, for purposes of the debt limit, the claims in Bucket 1 Exigent CYA are not noncontingent liquidated debts of the Debtor and thus do not count as to the Chapter 13 debt limit.

**Bucket 2: Unliquidated Tort Claims (the "Tort Claims")**

For those scheduled claims fitting within this category, Debtor primarily listed a value of zero or unknown because he disputes any liability. The claims in this category include Saad, Carter and the Boyds. For purposes of the debt limit, these debts are not liquidated and thus do not count as to the Chapter 13 debt limit.[3] That creditors file proofs of claim postpetition, whether or not objected to,

---

[2] See e.g. Ho v. Dowell (In re Ho), 274 B.R. 867, 870 (B.A.P. 9th Cir. 2002) ("In reaching that conclusion, the court counted a contract debt of a corporation in which Debtor was a minority shareholder. Debtor was neither a party to the contract nor a guarantor of the debt, but had listed the corporate creditor as a creditor holding an unliquidated, disputed, unsecured claim on her bankruptcy schedules, with the amount of the claim specified as "unknown." This case presents the question of whether a chapter 13 debtor's liability for a debt plays any role in determining whether the debt is unliquidated for purposes of determining eligibility to be a chapter 13 debtor under § 109(e). Because we conclude that it does, and because we conclude that under the facts and circumstances present in this case, the debt at issue is unliquidated, we REVERSE and REMAND.")

[3] In re Arcella-Coffman, 318 B.R. 463, 473 (Bankr. N.D. Ind. 2004) ("The eligibility of a Chapter 13 debtor is not determined by the amount of 'claims'; it is determined by the amount of 'debts'. In a legal proceeding to actually 'liquidate' a claim, one does not get to the damage determination until the threshold issue of liability has been determined adversely to the defendant. . . . [I]t simply cannot have been Congress' intent that § 109(e) debt ceiling determinations are to be made by assuming that a debtor is liable on any, and every, claim asserted by a creditor, or on every 'claim' stated in a debtor's schedules which the debtor denotes as being merely 'disputed'. . . . '[T]he question whether a debt is liquidated turns on whether it is subject to "ready determination and precision in computation of the amount due."' (citations omitted). Properly understood, this test has two components: ready determination, which focuses on the debtor's liability on a claim, and precision in computation of the amount due, which focuses on the monetary award . . . . A debt

does not affect Debtor's eligibility.[4]

**Bucket 3. Unliquidated IRS claim.**

The IRS's claim was listed as unknown. This is consistent with the Debtor's belief that he didn't owe any money to the IRS, the recent letter from the IRS indicating that Debtor is correct because it says he is entitled to a refund, the IRS proof of claim which indicates that it is based on estimated [and not actual] returns, and the fact that the IRS has amended its proof of claim multiple times to liquidate the amount owed.

The IRS proof of claim was not liquidated, as can be seen by the initial proof of claim which is based on estimated returns

---

is subject to 'ready determination and precision in computation' if the debtor's liability and the amount due can 'be readily ascertained either by reference to an agreement or through simple mathematics'. If a factfinder must rely upon its judgment to establish liability, or to compute an appropriate amount to compensate for past or future injury, then the debt will be 'unliquidated'.Because the determination of both liability and damages ordinarily requires the exercise of judgment by the factfinder, claims based on tort and on quantum meruit are generally unliquidated . . . . To be 'liquidated', both liability on a claim, and the amount of the debt once liability is established, must be capable of being determined in a relatively simple hearing, and must not require an extended evidentiary hearing for their determination.")

[4] See e.g. Ho v. Dowell (In re Ho), 274 B.R. 867, 872 n.5 (B.A.P. 9th Cir. 2002) ("DHE argues that Debtor is ineligible to be a chapter 13 debtor based on its claim alone, because it has filed a $1,387,651.39 proof of claim, Debtor has not objected to its claim and, under § 502(a), a claim is deemed allowed absent an objection. We reject DHE's argument … the amount of a chapter 13 debtor's debt is determined as of the date of the filing of the petition. In re Slack, 187 F.3d 1070, 1073 (9th Cir. 1999). …")

| Unsecured Priority Claims | | under section 507(a)(8) of the Bankruptcy Code | | | |
|---|---|---|---|---|---|
| Taxpayer ID Number | Kind of Tax | Tax Period | Date Tax Assessed | Tax Due | Interest to Petition Date |
| XXX-XX-8602 | INCOME | 12/31/2021 | 06/06/2022 | $141,644.00 | $18,514.94 |
| XXX-XX-8602 | INCOME | 12/31/2022 | 1 1-ESTIMATED-SEE NOTE | $190,652.70 | $12,904.09 |
| XXX-XX-8602 | INCOME | 12/31/2023 | 2 D-ESTIMATED-SEE NOTE | $190,652.70 | $0.00 |
| | | | | $522,949.40 | $31,419.03 |
| | | **Total Amount of Unsecured Priority Claims:** | | | **$554,368.43** |

and the multiple amendments to the proof of claim to liquidate the amount based on actual filed returns:



Debtor appears to have been correct that the IRS does not hold a claim as the IRS's letter indicates that money is in fact owed to the Debtor of over $35,000.

Debtor was correct to not add the IRS "debt" to the Chapter 13 debt

calculation.

## Bucket 4. Contingent SBA Debt

As a general matter, guarantee obligations are "contingent". <u>See e.g.</u> <u>Aaron v. U.S. Dep't of Educ. (In re Aaron</u>), CASE NO. 13-62693, 3 (Bankr. N.D. Ohio June. 20, 2016) ("Examples of contingent claims include guarantees and tort claims that have not been reduced to judgment …<u>In re Hughes</u>, 98 B.R. 784 (Bankr. S.D. Ohio 1989) (citations omitted).")[5].

In the instant case, this Court should not find that the SBA obligation is noncontingent and liquidated because, inter alia,

1.     The documents attached by the SBA, including the purported guarantee, are unsigned, which is inconsistent with attempting to enforce the

---

[5] See also <u>In re Mitchell</u>, CASE NO. 12-70856, 16-17 (Bankr. W.D. Va. Jan. 30, 2013) (""In deciding whether a claim is noncontingent, and therefore counted toward the debt limits, courts have generally ruled that if a debt does not come into existence until the occurrence of a future event, the debt is contingent." Collier ¶ 109.06[2][b], at p. 109-41. An often used example of a contingent debt is a guaranty. See id. at 109-42. "Contract claims against the debtor other than guaranties are generally held to be noncontingent debts for Chapter 13 eligibility purposes…" Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, § 15.4, at ¶ 1, Sec. Rev. June 11, 2004, www.Ch13online.com. "); <u>In re Green</u>, 574 B.R. 570, 579-80 (Bankr. E.D.N.C. 2017) ("As noted above, "a debt is noncontingent if all of the events necessary to give rise to liability for it take place prior to the filing of the petition." <u>Sappah</u> , 2012 WL 6139644, at 1. "Contract claims against the debtor other than guaranties are generally held to be noncontingent debts for Chapter 13 eligibility purposes.... Debts based on promissory notes ... typically are not contingent because the debtor's liability is fixed by contract from the inception and is not dependent on any future event other than the passage of time." Mitchell , slip op. at 17 (quoting Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition , § 15.4, at ¶ 1, Sec. Rev. June 11, 2004, www.Ch13online.com)."); See also <u>In re Albano</u>, 55 B.R. 363, 369 (Bankr. N.D. Ill. 1985) ("Any liability of corporate principals under the alter ego doctrine (see <u>Allied Chemical Corp. v. Randall</u>, 321 F.2d 320, 323 (7th Cir. 1963)) is a back-up, contingent in the same way a guarantor's debt is contingent upon failure of the principal to pay. In the analytical terms already discussed, the amount of the debt is settled but Albanos' personal liability is contingent.")

guaranty in light of the statute of frauds which requires a written guarantee executed by the guarantor. It is not "legally certain" per <u>In re Odette</u> that Debtor owes on the guarantee based on the documents attached to the SBA's proof of claim. A copy of the proof of claim in Debtor's case is attached. [6]



**11. GUARANTOR(S) NAME(S) AND SIGNATURE(S).**

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

**GUARANTOR:**

_____

Brandon Heitmann, individually

Page 5 of 5

SBA FORM 2128

    2.      Exigent, the primary borrower, is an asset case and SBA holds the primary secured claim as to the non-titled assets, upon information and belief.

---

[6] <u>Cf.</u> <u>In re Robertson</u>, 143 B.R. 76, 79-80 (Bankr. N.D. Tex. 1992) ("Under this approach, contract debts, even though disputed, are considered liquidated and tort claims are not. Tort claims and quantum meruit claims, by their very nature, are not fixed until a judicial award fixes their liability and amount ( e.g., tort or quantum meruit claims require proof as to liability, reasonable value, and damages). <u>Denham v. Shellman Grain Elevator, Inc.</u>, 444 F.2d 1376, 1380 (5th Cir. 1971)....Based on the foregoing, this Court finds that the statutory tax penalties assessed against Debtor under §§ 6700 and 6701 of the Tax Code are contingent nonliquidated obligations, and are not to be counted in evaluating whether Debtor is eligible, pursuant to § 109(e), to be a debtor under Chapter 13 of the Bankruptcy Code. Dismissal of the petition is inappropriate

Exigent sold assets including through auction and is pursuing avoidance actions from which the SBA may be paid. SBA appears to have the first priority secured claim and will be at the top of the list or near the top of the priority ladder when it comes to priority of payout for non-titled equipment.

A review of the Exigent docket shows the following:

**1. Exigent is an asset case**

| | |
|---|---|
| Case Name: | Exigent Landscaping, LLC |
| Case Number: | 23-46912-tjt |
| Document Number: | 160 |

Docket Text:
Trustee's Notice of Assets and Notice to Creditors Filed by Trustee Mark H. Shapiro. Proofs of Claims due by 5/20/2024. (Shapiro, Mark)

**2. The Exigent Trustee has started pursuing preference actions**

| | |
|---|---|
| Case Name: | Shapiro v. SCP Distributors, LLC |
| Case Number: | 24-04445-tjt |
| Document Number: | 1 |

| | |
|---|---|
| Case Name: | Exigent Landscaping, LLC |
| Case Number: | 23-46912-tjt |
| Document Number: | 236 |

Docket Text:
Adversary case 24-04445. (12 (Recovery of money/property - 547 preference)), (14 (Recovery of money/property - other)): Complaint by Mark H. Shapiro against SCP Distributors, LLC. Receipt Number Deferred, Fee Amount of $ 350 is Deferred. (Clark, Tracy)

**3. The Exigent Trustee has conducted an auction**

| Case Name: | Exigent Landscaping, LLC |
|---|---|
| Case Number: | 23-46912-tjt |
| Document Number: | 222 |

Docket Text:
Report of Sale of Assets of the business Filed by Trustee Mark H. Shapiro (RE: related document(s)[210] Order on Motion To Sell Property Free and Clear of Lien). (Shapiro, Mark)

## 4.    And sold additional assets

| Case Name: | Exigent Landscaping, LLC |
|---|---|
| Case Number: | 23-46912-tjt |
| Document Number: | 232 |

Docket Text:
Report of Sale of 2 Trailers Filed by Trustee Mark H. Shapiro (RE: related document(s)[210] Order on Motion To Sell Property Free and Clear of Lien, [229] Order on Generic Motion). (Shapiro, Mark)

## Bucket 5. (24 Capital)

Debtor listed 24 Capital as being owed zero. This is consistent with their proof of claim in the Exigent bankruptcy [Exigent POC 44] which does not state that Mr. Heitmann is a guarantor. The "guaranty" portion of the loan documents does not list Mr. Heitmann, it lists Exigent Design and Build,and the signature line for that entity is signed by Mr. Heitmann and does not state that Mr. Heitmann is guaranteeing the obligation himself.

**SECURITY AGREEMENT AND GUARANTY**

| | | | |
|---|---|---|---|
| Merchant's Legal Name: EXIGENT LANDSCAPING LLC | | | |
| DBA: EXIGENT LANDSCAPING, LLC | | | |
| Federal Tax ID: 82-1285176 | | | |
| Physical Address: 51517 VAN DYKE AVE | City: SHELBY TOWNSHIP | State: MI | Zip: 48316 |
| Additional Guarantor(s): https://www.exigentdesignbuild.com/ & 55724 RECERVE DT SHELBY TWP MI 48316 & EXIGENT LAWN CARE AND SNOW REMOVAL SERVICES LLC & EXIGENT &  Exigent Design & Build, LLC | | | |
| -- AND | | | |
| | | | |

He/she has consulted with counsel of its choice or has decided not to avail himself/herself of that opportunity.

**FOR THE MERCHANT (#1)** By: BRANDON LEWIS  HEITMANN

DocuSigned by: ▊▊▊ EA032F4BB5F343B...

Driver's License Number ▊▊▊▊▊ (Print Name) (Signature) (SSN#)

**FOR THE MERCHANT (#2)** By:

Driver's License Number (Print Name) (Signature) (SSN#)

**BY OWNER (#1)** By: BRANDON LEWIS  HEITMANN

DocuSigned by: ▊▊▊ EA032F4BB5F343B...

Driver's License Number ▊▊▊▊▊ (Print Name) (Signature) (SSN#)

**BY OWNER (#2)** By:

Driver's License Number (Print Name) (Signature) (SSN#)

**FOR THE GURANTOR(S)** By: BRANDON LEWIS  HEITMANN

DocuSigned by: ▊▊▊ EA032F4BB5F343B...

Driver's License Number ▊▊▊▊▊ (Print Name) (Signature) (SSN#)

**FOR THE GURANTOR(S)** By:

Driver's License Number (Print Name) (Signature) (SSN#)

## II. Legal Framework

### A.    Burden of Proof

The party challenging eligibility has the initial burden of going forward with evidence that the debtor is not eligible. See <u>In re Horne,</u> 277 B.R. 320, 322 (Bankr. E.D. Tex. 2002) (On a motion to dismiss, "[m]ovant bears the burden of proof to demonstrate to the Court, by a preponderance of the evidence, that the Debtor does not comply with the § 109 debt limit."); <u>In re Baird</u>, 228 B.R. 324, 327–30 (Bankr. M.D. Fla. 1999) ("It is the debtor's burden to demonstrate . . . regular income. . . .

IDS, as movant, bears the burden of proof to demonstrate . . . by a preponderance of the evidence, that Debtor does not comply within the $250,000 debt limit.").  As a general matter, Movant has the burden to prove sufficient "cause" to dismiss under Section 1307.  <u>Alt v. United States (In re Alt)</u>, 305 F.3d 413, 420 (6th Cir.2002).

## B.     Debt Eligibility Analysis

Creditor Saad seeks dismissal of this case on the ground that the Debtor is not eligible to be a debtor in Chapter 13 under 11 U.S.C. § 109(e), because it alleges that the Debtor's debts exceed the $2.75 million limit in § 109(e).  The version of § 109(e), which applies to this case, states:

"Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated debts of less than $2,750,000 or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated debts that aggregate less than $2,750,000 may be a debtor under chapter 13 of this title. "

11 U.S.C. § 109(e).

The starting point in the Court's § 109(e) eligibility analysis is the Debtor's bankruptcy petition and schedules. "[A] court should rely primarily upon the debtor's schedules checking only to see if the schedules were made in good faith on the theory that section 109(e) considers debts as they exist at the time of filing, not after a hearing." <u>Comprehensive Accounting Corp. v. Pearson (In re Pearson)</u>,773 F.2d 751, 756 (6th Cir. 1985).  As Judge Shapero stated,

"the guiding cases in this circuit appear to be <u>In Re Pearson</u>,773 F.2d 751 (6th Cir. 1985), as elaborated upon in the case of <u>In Re Mannor</u>,175 B.R. 639 (Bankr. E.D. Mich 1994), the language of which requires the conclusion that: (1) a debtor's good faith assertion as to how much is owed is ordinarily accepted at face value and should "normally" be determined by the debtor's schedules; and (2) that as to any asserted amounts other than those in the schedules, the inquiry can go outside the schedules, but, ultimately only to

the extent it appears from said inquiry as a "legal certainty," that such are debts of debtors, should they be utilized in determining eligibility (notwithstanding that debtors may have filed the schedules in good faith). See <u>In re Crouch</u>,30 B.R. 300 (Bankr. S.D. Ohio 1983); <u>In re Snell</u>,227 B.R. 127 (Bankr.S.D. Ohio 1998). Part of the rationale of <u>Pearson</u> and similar authorities is that the nature of the threshold eligibility issue is such that it should not be one that is lengthy, involved, or so deeply evidentiary as to go to the point of having the Court substantially dispose of the question of whether or not the Debtors or either of them are ultimately and legally liable for each of the debts the existence or amount of which may have some bearing on the eligibility issue."

<u>In re Odette</u>, 347 B.R. 60, 62-63 (Bankr. E.D. Mich. 2006)

As Judge McIvor held, flaws in a debtor's schedules do not equate to bad faith.

"Nevertheless, this Court finds that absent some intentional misstatement by Debtor for the purpose of avoiding the jurisdictional limit, carelessness in the preparation of schedules is insufficient to establish "bad faith" for jurisdictional purposes. In this case, it does not appear that the carelessly filed schedules were filed for the purpose of avoiding the jurisdictional limit. Even if Debtor had accurately stated the dollar amount owed to Fleet Credit Card Services, the amount of the noncontingent, liquidated, unsecured debt, is substantially less than the jurisdictional limits imposed by 11 U.S.C. 109(e). This Court finds that the errors on Debtor's schedules are insufficient for finding the bad faith necessary for the dismissal of this case on jurisdictional grounds."

<u>In re Karpinsky</u>, 05-70630 (Bankr. E.D. Mich. 3/10/2006)(J. McIvor, available at  https://apps.mieb.uscourts.gov/files/opinions/05-70630.pdf).

## III.    Application of Law to Facts

## 1.    Amount Of Debt Within Statutory Limits

Movant argues on pp. 7-8 of its Motion to Dismiss that that the debt limit has

been exceeded because

> "The Debtor scheduled debts totaling $2,526,222.91. However, Debtor
> improperly scheduled several claims. Debtor underestimated several claims,
> when compared with claims filed by such creditors. Several creditors are
> inexplicably listed with claims of "$0.00" or "Unknown." Debtor improperly
> identified the amount that he owes to defrauded homeowners as zero. Some
> such homeowners have filed claims, in substantial amounts. The claims filed
> in this case total $3,632,604.44. By the filed claims alone, Debtor is at least
> $882,604.44 over the debt limit. Debtor does not qualify for Chapter 13, even
> under the enhanced limits of the BTATCA. Debtor may argue that the debts
> were disputed when he filed his petition, and he therefore listed them on his
> Schedule E/F as having no value. However, the claims in this case were filed
> over five months ago (with the singular exception of Saad's claim, which was
> filed over two months ago). Debtor has not objected to any creditors' proof of
> claim in this case. "

Movant is misapplying the debt limit test.  Under the version of 11 U.S.C. §

109(e) applicable when Debtor filed its chapter 13 bankruptcy,

> "Only an individual with regular income that owes, on the date of the filing
> of the petition, noncontingent, liquidated debts of less than $2,750,000....may
> be a debtor under chapter 13".

In determining whether a Chapter 13 debtor's debts exceeds the § 109(e) debt

limitations (the "Debt Limit"), the focus is on the amount of the secured and

unsecured debts as of the petition date. With respect to the nature and amount of

the Debtor's secured and unsecured debts, the Court must look first to the Debtor's

schedules. As the United States Court of Appeals for the Sixth Circuit has held,

"Chapter 13 eligibility should normally be determined by the debtor's schedules checking only to see if the schedules were made in good faith."

Comprehensive Accounting Corp. v. Pearson (In re Pearson), 773 F.2d 751, 757 (6th Cir. 1985); see also Scovis v. Henrichsen (In re Scovis), 249 F.3d 975, 982 (9th Cir. 2001)(same).

Accordingly, in order for a claim to count against the Debt Limit, a claim must be noncontingent, liquidated, and owed by the Debtor as of the Petition Date. This is a snapshot test, designed for easy application and not extended evidentiary hearings. Comprehensive Accounting Corp. v. Pearson (In re Pearson), 773 F.2d 751, 757 (6th Cir. 1985). Movant's reliance on vague allegations regarding additional debt does not change the fact that Debtor's Schedules were prepared in good faith based on all available information.

### a. Unliquidated Claims are not relevant to the Debt Limit.

Movant appears to be taking the position that unliquidated claims should count against the Debt Limit. This is untrue. Movant states on page 7 of its Motion,

"Debtor improperly identified the amount that he owes to defrauded homeowners as zero. Some such homeowners have filed claims, in substantial amounts. The claims filed in this case total $3,632,604.44. By the filed claims alone, Debtor is at least $882,604.44 over the debt limit."

Pursuant to Pearson, the determination of the Debt Limit is as of the petition date, not later in time. Debtor disputes that he owes any money to Exigent's former customers, and is actively litigating claims by Carter, Saad and Boyd. These claims have not been liquidated by any Court.

The fact that Carter, Saad and Boyd filed proofs of claim just means that they think they have a right to payment which is a requirement for distributions under

the Plan.  Debtor disputes any liability to them, and is  defending the Macomb

County lawsuits and the Saad adversary proceeding.  Accordingly, Debtor is under

the Debt Limit, and Saad's assertions are based on a misapplication of the law and

facts.

**b.      Only claims against the Debtor apply**

Debtor did list numerous claims in the amount of $0.00.  This is because

while Debtor did not owe these entities any money, he wanted to give them notice

because they were potential creditors of Exigent, and Debtor did not want to have to

deal with any potential issues in the future of a claimant saying that its claim was

not discharged because it was not listed.  If they thought they had a claim, they

would presumably file a proof of claim and govern themselves accordingly.  Debtor

erred on the side of caution to provide notice.

In arguing that the Debt Limit was exceeded, Movant improperly included

claims that are contingent, unliquidated, or that are owed by related entities rather

than the Debtor personally. This practice is misleading and inflates the true debt

obligations of the Debtor. When the proper analysis is applied, and only the

noncontingent, liquidated debts of the Debtor are considered, the total amount is

below the statutory Debt Limit, confirming the Debtor's eligibility for Chapter 13

relief.  See Comprehensive Accounting Corporation v. Pearson, 773 F.2d 751 (6th

Cir. 1985)).

WHEREFORE, the Debtor respectfully requests that this Honorable Court deny the Motion to Dismiss.

Respectfully submitted,

__/s/ Robert Bassel _____
ROBERT N. BASSEL (P48420)
Attorneys for Debtor
P.O. Box T
Clinton, MI 49236
DATED: 1.6.2025                    (248) 677-1234
bbassel@gmail.com

**Fill in this information to identify the case:**

Debtor 1   Brandon Heitmann

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court   **Eastern District of Michigan**

Case number:  **24-41956**

## Official Form 410
## Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| **Part 1:** | **Identify the Claim** |
|---|---|

**1. Who is the current creditor?**

Small Business Administration

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Small Business Administration | SBA Denver Finance Center |
| Name | Name |
| 409 3rd St SW<br>Washington DC 20416 | 721 19th Street<br><br>Denver, CO 80202 |
| Contact phone          3038443568 | Contact phone |
| Contact email     suzanne.ulicny@sba.gov | Contact email     suzanne.ulicny@sba.gov |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____   Filed on _____
                                                                                                    MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing?

Official Form 410                    Proof of Claim                    page 1

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
|---|---|

| 6. | Do you have any number you use to identify the debtor? | ☐ No<br>☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:        9916 |
|---|---|---|

| 7. | How much is the claim? | $     551887.00 | **Does this amount include interest or other charges?**<br>☐ No<br>☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
|---|---|---|---|

| 8. | What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>     Money loaned |
|---|---|---|

| 9. | Is all or part of the claim secured? | ☑ No<br>☐ Yes. The claim is secured by a lien on property.<br>     **Nature of property:**<br>     ☐ Real estate.   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim.*<br>     ☐ Motor vehicle<br>     ☐ Other. Describe: _____<br><br>     **Basis for perfection:** _____<br><br>     Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>     **Value of property:**     $ _____<br><br>     **Amount of the claim that is secured:**     $ _____<br><br>     **Amount of the claim that is unsecured:**     $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>     **Amount necessary to cure any default as of the date of the petition:**     $ _____<br><br>     **Annual Interest Rate** (when case was filed)     _____ %<br><br>     ☐   Fixed<br>     ☐   Variable |
|---|---|---|

| 10. | Is this claim based on a lease? | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |
|---|---|---|

| 11. | Is this claim subject to a right of setoff? | ☑ No<br>☐ Yes. Identify the property: _____ |
|---|---|---|

Official Form 410                  Proof of Claim                  page 2

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No<br>☐ Yes. *Check all that apply:* | | Amount entitled to priority |
|---|---|---|---|---|

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). $ _____

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). $ _____

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies $ _____

\* Amounts are subject to adjustment on 4/1/22 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
**18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    5/22/2024

           MM / DD / YYYY

/s/ Suzanne Ulicny

Signature

Print the name of the person who is completing and signing this claim:

Name      Suzanne Ulicny

         First name    Middle name    Last name

Title      Legal Counsel

Company      SBA

         Identify the corporate servicer as the company if the authorized agent is a servicer

Address      477 Michigan Avenue

         Number   Street

         Detroit, MI 48226

         City   State   ZIP Code

Contact phone    3473650161      Email    suzanne.ulicny@sba.gov

SBA Loan ▓▓▓▓▓▓▓                                          Application ▓▓▓▓

Economic Injury Disaster Loan

# AMENDED LOAN AUTHORIZATION AND AGREEMENT

Date: 07.13.2020, 09.17.2021 (Effective Date)

On the above date, this Administration (SBA) authorized (under Section 7(b) of the Small Business Act, as amended) a Loan or Loan Modification (SBA Loan ▓▓▓▓▓▓) to Exigent Landscaping LLC (Borrower) of 14450 BOURNEMUTH DR SHELBY TWP Michigan 48315 in the amount of five hundred thousand and 00/100 Dollars ($500,000.00), upon the following conditions:

## PAYMENT

- Installment payments, including principal and interest, of $2,525.00 <u>Monthly</u>, will begin <u>Twenty-four (24) months</u> from the date of the Original Note. The balance of principal and interest will be payable <u>Thirty (30) years</u> from the date of the Original Note.

## INTEREST

- Interest will accrue at the rate of <u>3.75</u>% per annum and will accrue only on funds actually advanced from the date(s) of each advance.

## PAYMENT TERMS

- Each payment will be applied first to interest accrued to the date of receipt of each payment, and the balance, if any, will be applied to principal.

- Each payment will be made when due even if at that time the full amount of the Loan has not yet been advanced or the authorized amount of the Loan has been reduced.

## COLLATERAL

- For loan amounts of greater than $25,000, Borrower hereby grants to SBA, the secured party hereunder, a continuing security interest in and to any and all "Collateral" as described herein to secure payment and performance of all debts, liabilities and obligations of Borrower to SBA hereunder without limitation, including but not limited to all interest, other fees and expenses (all hereinafter called "Obligations"). The Collateral includes the following property that Borrower now owns or shall acquire or create immediately upon the acquisition or creation thereof: all tangible and intangible personal property, including, but not limited to: (a) inventory, (b) equipment, (c) instruments, including promissory notes (d) chattel paper, including tangible chattel paper and electronic chattel paper, (e) documents, (f) letter of credit rights, (g) accounts, including health-care insurance receivables and credit card receivables, (h) deposit accounts, (i) commercial tort claims, (j) general intangibles, including payment intangibles and software and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code. The security interest Borrower grants includes all accessions, attachments, accessories, parts, supplies and replacements for the Collateral, all products, proceeds and collections thereof and all records and data relating thereto.

- For loan amounts of $25,000 or less, SBA is not taking a security interest in any collateral.

## GUARANTEE

Borrower will provide the following guarantee(s):

SBA Form 1391 (5-00)                                                      Ref 50 30

- Guarantee on SBA Form 2128 of: Brandon Heitmann (14450 BOURNEMUTH DR, SHELBY TWP, MI)

## REQUIREMENTS RELATIVE TO COLLATERAL

- Borrower will not sell or transfer any collateral (except normal inventory turnover in the ordinary course of business) described in the "Collateral" paragraph hereof without the prior written consent of SBA.

## USE OF LOAN PROCEEDS

- Borrower will use all the proceeds of this Loan solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and continuing thereafter and for loans of more than $25,000 to pay Uniform Commercial Code (UCC) lien filing fees and a third-party UCC handling charge of $100 which will be deducted from the Loan amount stated above.

## REQUIREMENTS FOR USE OF LOAN PROCEEDS AND RECEIPTS

- Borrower will obtain and itemize receipts (paid receipts, paid invoices or cancelled checks) and contracts for all Loan funds spent and retain these receipts for 3 years from the date of the final disbursement. Prior to each subsequent disbursement (if any) and whenever requested by SBA, Borrower will submit to SBA such itemization together with copies of the receipts.

- Borrower will not use, directly or indirectly, any portion of the proceeds of this Loan to relocate without the prior written permission of SBA. The law prohibits the use of any portion of the proceeds of this Loan for voluntary relocation from the business area in which the disaster occurred. To request SBA's prior written permission to relocate, Borrower will present to SBA the reasons therefore and a description or address of the relocation site. Determinations of (1) whether a relocation is voluntary or otherwise, and (2) whether any site other than the disaster-affected location is within the business area in which the disaster occurred, will be made solely by SBA.

- Borrower will, to the extent feasible, purchase only American-made equipment and products with the proceeds of this Loan.

- Borrower will make any request for a loan increase for additional disaster-related damages as soon as possible after the need for a loan increase is discovered. The SBA will not consider a request for a loan increase received more than **two (2)** years from the date of loan approval unless, in the sole discretion of the SBA, there are extraordinary and unforeseeable circumstances beyond the control of the borrower.

## DEADLINE FOR RETURN OF LOAN CLOSING DOCUMENTS

- **Borrower will sign and return the loan closing documents to SBA within 2 months of the date of this Loan Authorization and Agreement**. By notifying the Borrower in writing, SBA may cancel this Loan if the Borrower fails to meet this requirement. The Borrower may submit and the SBA may, in its sole discretion, accept documents after 2 months of the date of this Loan Authorization and Agreement.

## COMPENSATION FROM OTHER SOURCES

- Eligibility for this disaster Loan is limited to disaster losses that are not compensated by other sources. Other sources include but are not limited to: (1) proceeds of policies of insurance or other indemnifications, (2) grants or other reimbursement (including loans) from government agencies or private organizations, (3)

claims for civil liability against other individuals, organizations or governmental entities, and (4) salvage (including any sale or re-use) of items of damaged property.

- Borrower will promptly notify SBA of the existence and status of any claim or application for such other compensation, and of the receipt of any such compensation, and Borrower will promptly submit the proceeds of same (not exceeding the outstanding balance of this Loan) to SBA.

- Borrower hereby assigns to SBA the proceeds of any such compensation from other sources and authorizes the payor of same to deliver said proceeds to SBA at such time and place as SBA shall designate.

- SBA will in its sole discretion determine whether any such compensation from other sources is a duplication of benefits. SBA will use the proceeds of any such duplication to reduce the outstanding balance of this Loan, and Borrower agrees that such proceeds will not be applied in lieu of scheduled payments.

## DUTY TO MAINTAIN HAZARD INSURANCE

- For loan amounts of greater than $25,000, within 12 months from the date of this Loan Authorization and Agreement the Borrower will provide proof of an active and in effect hazard insurance policy including fire, lightning, and extended coverage on all items used to secure this loan to at least 80% of the insurable value. Borrower will not cancel such coverage and will maintain such coverage throughout the entire term of this Loan. **BORROWER MAY NOT BE ELIGIBLE FOR EITHER ANY FUTURE DISASTER ASSISTANCE OR SBA FINANCIAL ASSISTANCE IF THIS INSURANCE IS NOT MAINTAINED AS STIPULATED HEREIN THROUGHOUT THE ENTIRE TERM OF THIS LOAN.** Please submit proof of insurance to: U.S. Small Business Administration, Office of Disaster Assistance, 14925 Kingsport Rd, Fort Worth, TX. 76155.

## BOOKS AND RECORDS

- Borrower will maintain current and proper books of account in a manner satisfactory to SBA for the most recent 5 years until 3 years after the date of maturity, including extensions, or the date this Loan is paid in full, whichever occurs first. Such books will include Borrower's financial and operating statements, insurance policies, tax returns and related filings, records of earnings distributed and dividends paid and records of compensation to officers, directors, holders of 10% or more of Borrower's capital stock, members, partners and proprietors.

- Borrower authorizes SBA to make or cause to be made, at Borrower's expense and in such a manner and at such times as SBA may require: (1) inspections and audits of any books, records and paper in the custody or control of Borrower or others relating to Borrower's financial or business conditions, including the making of copies thereof and extracts therefrom, and (2) inspections and appraisals of any of Borrower's assets.

- Borrower will furnish to SBA, not later than 3 months following the expiration of Borrower's fiscal year and in such form as SBA may require, Borrower's financial statements.

- Upon written request of SBA, Borrower will accompany such statements with an 'Accountant's Review Report' prepared by an independent public accountant at Borrower's expense.

- Borrower authorizes all Federal, State and municipal authorities to furnish reports of examination, records and other information relating to the conditions and affairs of Borrower and any desired information from such reports, returns, files, and records of such authorities upon request of SBA.

██████████                                                        ██████████

LIMITS ON DISTRIBUTION OF ASSETS

- Borrower will not, without the prior written consent of SBA, make any distribution of Borrower's assets, or give any preferential treatment, make any advance, directly or indirectly, by way of loan, gift, bonus, or otherwise, to any owner or partner or any of its employees, or to any company directly or indirectly controlling or affiliated with or controlled by Borrower, or any other company.

EQUAL OPPORTUNITY REQUIREMENT

- If Borrower has or intends to have employees, Borrower will post SBA Form 722, Equal Opportunity Poster (copy attached), in Borrower's place of business where it will be clearly visible to employees, applicants for employment, and the general public.

DISCLOSURE OF LOBBYING ACTIVITIES

- Borrower agrees to the attached Certification Regarding Lobbying Activities

BORROWER'S CERTIFICATIONS

Borrower certifies that:

- There has been no substantial adverse change in Borrower's financial condition (and organization, in case of a business borrower) since the date of the application for this Loan. (Adverse changes include, but are not limited to: judgment liens, tax liens, mechanic's liens, bankruptcy, financial reverses, arrest or conviction of felony, etc.)

- No fees have been paid, directly or indirectly, to any representative (attorney, accountant, etc.) for services provided or to be provided in connection with applying for or closing this Loan, other than those reported on SBA Form 5 Business Disaster Loan Application'; SBA Form 3501 COVID-19 Economic Injury Disaster Loan Application; or SBA Form 159, 'Compensation Agreement'. All fees not approved by SBA are prohibited.

- All representations in the Borrower's Loan application (including all supplementary submissions) are true, correct and complete and are offered to induce SBA to make this Loan.

- No claim or application for any other compensation for disaster losses has been submitted to or requested of any source, and no such other compensation has been received, other than that which Borrower has fully disclosed to SBA.

- Neither the Borrower nor, if the Borrower is a business, any principal who owns at least 50% of the Borrower, is delinquent more than 60 days under the terms of any: (a) administrative order; (b) court order; or (c) repayment agreement that requires payment of child support.

- Borrower certifies that no fees have been paid, directly or indirectly, to any representative (attorney, accountant, etc.) for services provided or to be provided in connection with applying for or closing this Loan, other than those reported on the Loan Application.
  All fees not approved by SBA are prohibited. If an Applicant chooses to employ an Agent, the compensation an Agent charges to and that is paid by the Applicant must bear a necessary and reasonable relationship to the services actually performed and must be comparable to those charged by other Agents in the geographical area. Compensation cannot be contingent on loan approval. In addition, compensation must not include any expenses which are deemed by SBA to be unreasonable for services actually performed or expenses actually incurred. Compensation must not include

SBA Form 1391 (5-00)                                                        Ref 50 30

charges prohibited in 13 CFR 103 or SOP 50-30, Appendix 1. **If the compensation exceeds $500 for a disaster home loan or $2,500 for a disaster business loan, Borrower must fill out the Compensation Agreement Form 159D which will be provided for Borrower upon request or can be found on the SBA website.**

- Borrower certifies, to the best of its, his or her knowledge and belief, that the certifications and representations in the attached Certification Regarding Lobbying are true, correct and complete and are offered to induce SBA to make this Loan.

CIVIL AND CRIMINAL PENALTIES

- Whoever wrongfully misapplies the proceeds of an SBA disaster loan shall be civilly liable to the Administrator in an amount equal to one-and-one half times the original principal amount of the loan under 15 U.S.C. 636(b). In addition, any false statement or misrepresentation to SBA may result in criminal, civil or administrative sanctions including, but not limited to: 1) fines, imprisonment or both, under 15 U.S.C. 645, 18 U.S.C. 1001, 18 U.S.C. 1014, 18 U.S.C. 1040, 18 U.S.C. 3571, and any other applicable laws; 2) treble damages and civil penalties under the False Claims Act, 31 U.S.C. 3729; 3) double damages and civil penalties under the Program Fraud Civil Remedies Act, 31 U.S.C. 3802; and 4) suspension and/or debarment from all Federal procurement and non-procurement transactions. Statutory fines may increase if amended by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015.

RESULT OF VIOLATION OF THIS LOAN AUTHORIZATION AND AGREEMENT

- If Borrower violates any of the terms or conditions of this Loan Authorization and Agreement, the Loan will be in default and SBA may declare all or any part of the indebtedness immediately due and payable. SBA's failure to exercise its rights under this paragraph will not constitute a waiver.

- A default (or any violation of any of the terms and conditions) of any SBA Loan(s) to Borrower and/or its affiliates will be considered a default of all such Loan(s).

DISBURSEMENT OF THE LOAN

- Disbursements will be made by and at the discretion of SBA Counsel, in accordance with this Loan Authorization and Agreement and the general requirements of SBA.

- Disbursements may be made in increments as needed.

- Other conditions may be imposed by SBA pursuant to general requirements of SBA.

- Disbursement may be withheld if, in SBA's sole discretion, there has been an adverse change in Borrower's financial condition or in any other material fact represented in the Loan application, or if Borrower fails to meet any of the terms or conditions of this Loan Authorization and Agreement.

- **NO DISBURSEMENT WILL BE MADE LATER THAN 6 MONTHS FROM THE DATE OF THIS LOAN AUTHORIZATION AND AGREEMENT UNLESS SBA, IN ITS SOLE DISCRETION, EXTENDS THIS DISBURSEMENT PERIOD.**

██████        ██████

PARTIES AFFECTED

- This Loan Authorization and Agreement will be binding upon Borrower and Borrower's successors and assigns and will inure to the benefit of SBA and its successors and assigns.

RESOLUTION OF BOARD OF DIRECTORS

- Borrower and any business entity guarantor shall, within 180 days of receiving any disbursement of this Loan, submit the appropriate SBA Certificate and/or Resolution to the U.S. Small Business Administration, Office of Disaster Assistance, 14925 Kingsport Rd, Fort Worth, TX. 76155.

ENFORCEABILITY

- This Loan Authorization and Agreement is legally binding, enforceable and approved upon Borrower's signature, the SBA's approval and the Loan Proceeds being issued to Borrower by a government issued check or by electronic debit of the Loan Proceeds to Borrower' banking account provided by Borrower in application for this Loan.

*James E. Rivera*

James E. Rivera
Associate Administrator
U.S. Small Business Administration

The undersigned agree(s) to be bound by the terms and conditions herein during the term of this Loan, and further agree(s) that no provision stated herein will be waived without prior written consent of SBA. **Under penalty of perjury of the United States of America, I hereby certify that I am authorized to apply for and obtain a disaster loan on behalf of Borrower, in connection with the effects of the COVID-19 emergency.**

**Exigent Landscaping LLC**

Date: 09.17.2021

Brandon Heitmann, Owner/Officer

<u>Note:</u> Corporate Borrowers must execute Loan Authorization and Agreement in corporate name, by a duly authorized officer. Partnership Borrowers must execute in firm name, together with signature of a general partner. Limited Liability entities must execute in the entity name by the signature of the authorized managing person.

| | U.S. Small Business Administration | Date: September 17, 2021 |
|---|---|---|
|  | **1st Modification of Note** | **Loan Amount: $500,000.00** |
| | (SECURED DISASTER LOANS) | **Annual Interest Rate: 3.750%** |

**Application** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1. **NOTE:** The "Note" is the SBA note signed by Borrower, dated **July 13, 2020** in the amount of **one hundred and forty thousand and 00/100 Dollars**, payable to SBA. This 1st Modification of Note modifies certain terms of the Note. The current modifications and any prior modifications to the Note, are disclosed below in Paragraphs 2 and 4.

2. **CURRENT PAYMENT TERMS:** Including terms modified by this agreement, the current payment terms of the 1st Modified Note are: The loan amount is **five hundred thousand.** The interest rate is **3.750%** per year. Payments of **$2,525.00** are due every **MONTH** beginning **Twenty-four (24)** months from the date of the Original Note. All remaining principal and accrued interest is due and payable Thirty (30) years from the date of Original Note.

3. **ADDITIONAL BORROWER: N/A**

4. **PREVIOUS NOTE AND MODIFICATIONS, IF ANY, AND CURRENT MODIFICATION TERMS SUMMARY:** The chart attached hereto and incorporated by reference as Addendum A is a summary of your original Note terms, any previous modifications thereto and this current modification:

5. **EFFECT OF THIS MODIFICATION:** All terms of the Note remain unchanged by this agreement except terms that are expressly modified. This Modification of Note becomes a part of the original Note and has the same effect as if its terms were in the original Note when it was signed.

6. **DEFINITIONS: A)** "Collateral" means any property taken as security for payment of the Note or any guarantee of the Note. **B)** "Guarantor" means each person or entity that signs a guarantee of payment of the Note. **C)** "Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

7. **DEFAULT:** Borrower is in default under the Note or any modification to the Note, if Borrower does not make a payment when due under the Note, or if Borrower: **A)** Fails to comply with any provision of the Note, the Loan Authorization and Agreement, or other Loan Documents; **B)** Defaults on any other SBA loan; **C)** Sells or otherwise transfers, or does not preserve or account to SBA's satisfaction for, any of the Collateral or its proceeds; **D)** Does not disclose, or anyone acting on their behalf does not disclose, any material fact to SBA; **E)** Makes, or anyone acting on their behalf makes, a materially false or misleading representation to SBA; **F)** Defaults on any loan or agreement with another creditor, if SBA believes the default may materially affect Borrower's ability to pay the Note; **G)** Fails to pay any taxes when due; **H)** Becomes the subject of a proceeding under any bankruptcy or insolvency law; **I)** Has a receiver or liquidator appointed for any part of their business or property; **J)** Makes an assignment for the benefit of creditors; **K)** Has any adverse change in financial condition or business operation that SBA believes may materially affect Borrower's ability to pay the Note; **L)** Dies; **M)** Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without SBA's prior written consent; or, **N)** Becomes the subject of a civil or criminal action that SBA believes may materially affect Borrower's ability to pay the Note.

SBA FORM 2131 (5-00)

8.  **SBA'S RIGHTS IF THERE IS A DEFAULT:** Without notice or demand and without giving up any of its rights, SBA may: **A)** Require immediate payment of all amounts owing under the Note; **B)** Collect all amounts owing from any Borrower or Guarantor; **C)** File suit and obtain judgment; **D)** Take possession of any Collateral; or, **E)** Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

9.  **SBA'S GENERAL POWERS:** Without notice and without Borrower's consent, SBA may: **A)** Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses; **B)** Incur expenses to collect amounts due under the Note, enforce the terms of the Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If SBA incurs such expenses, it may demand immediate reimbursement from Borrower or add the expenses to the principal balance; **C)** Release anyone obligated to pay the Note; **D)** Compromise, release, renew, extend or substitute any of the Collateral; and **E)** Take any action necessary to protect the Collateral or collect amounts owing on the Note.

10. **WHEN FEDERAL LAW APPLIES:** When SBA is the holder, the Note will be interpreted and enforced under federal law, including SBA regulations. SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to the Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

11. **GENERAL PROVISIONS: A)** All individuals and entities signing the Note, including this Modification, are jointly and severally liable. **B)** Borrower waives all suretyship defenses. **C)** Borrower must sign all documents required at any time to comply with the Loan Documents and to enable SBA to acquire, perfect, or maintain SBA's liens on Collateral. **D)** SBA may exercise any of its rights separately or together, as many times and in any order it chooses. SBA may delay or forgo enforcing any of its rights without giving up any of them. **E)** Borrower may not use an oral statement of SBA to contradict or alter the written terms of the Note. **F)** If any part of the Note is unenforceable, all other parts remain in effect. **G)** To the extent allowed by law, Borrower waives all demands and notices in connection with the Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that SBA did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale. **H)** SBA may sell or otherwise transfer the Note.

12. **MISUSE OF LOAN FUNDS:** Anyone who wrongfully misapplies any proceeds of the loan will be civilly liable to SBA for one and one half times the proceeds disbursed, in addition to other remedies allowed by law.

13. **BORROWER'S NAME(S) AND SIGNATURE(S):** By signing below, each individual or entity acknowledges and accepts personal obligation and full liability under the Note as Borrower.

**Exigent Landscaping LLC**

Brandon Heitmann, Owner/Officer

SBA FORM 2131 (5-00)



## U.S. Small Business Administration
# UNCONDITIONAL GUARANTEE
## (DISASTER LOANS)

| | |
|---|---|
| SBA Loan # | ███████ |
| Application # | ███████ |
| Guarantor(s) | Brandon Heitmann |
| Borrower | Exigent Landscaping LLC |
| Date | 09.17.2021 |
| Note Amount | $500,000.00 |

1. **GUARANTEE.**

   Guarantor(s) unconditionally guarantee(s) payment to SBA of all amounts owing under the Note and any modifications of the Note. This Guarantee remains in effect until the Note and any modifications of the Note is paid in full. Guarantor(s) must pay all amounts due under the Note and any modifications of the Note when SBA makes written demand upon Guarantor(s). SBA is not required to seek payment from any other source before demanding payment from Guarantor(s).

2. **NOTE.**

   The "Note" is the promissory note dated 07.13.2020 and any modifications thereto in the total principal amount of **five hundred thousand  and 00/100 Dollars ($500,000.00.**) from Borrower to SBA. It includes any assumption, renewal, substitution, modifications or replacement of the Note.

3. **DEFINITIONS.**

   "Collateral" means property, if any, taken as security for payment of the Note and any modifications of the Note or any guarantee of the Note.
   "Loan" means the loan evidenced by the Note and any modifications of the Note.
   "Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor(s) or any other guarantor, or anyone who pledges Collateral.
   "SBA" means the Small Business Administration, an Agency of the United States of America.

SBA FORM 2128

4. **SBA'S GENERAL POWERS.**

SBA may take any of the following actions at any time, without notice, without Guarantor(s)' consent, and without making demand upon Guarantor(s):

A.   Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note and any modifications of the Note;

B.   Refrain from taking any action on the Note and any modifications of the Note, the Collateral, or any guarantee;

C.   Release any Borrower or any guarantor of the Note and any modifications of the Note;

D.   Compromise or settle with the Borrower or any guarantor of the Note and any modifications of the Note;

E.   Substitute or release any of the Collateral, whether or not SBA receives anything in return;

F.   Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G.   Bid or buy at any sale of Collateral by SBA or any other lienholder, at any price SBA chooses; and

H.   Exercise any rights it has, including those in the Note and any modifications of the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor(s) or create any rights or claims against SBA.

5. **FEDERAL LAW.**

When SBA is the holder, the Note and any modifications of the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor(s) may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6. **RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR(S) WAIVE(S).**

To the extent permitted by law,

I.   Guarantor(s) waive(s) all rights to:

  1)   Require presentment, protest, or demand upon Borrower;
  2)   Redeem any Collateral before or after SBA disposes of it;
  3)   Have any disposition of Collateral advertised; and
  4)   Require a valuation of Collateral before or after SBA disposes of it.

J.   Guarantor(s) waive(s) any notice of:

  1)   Any default under the Note and/or any modifications of the Note;
  2)   Presentment, dishonor, protest, or demand;
  3)   Execution of the Note and/or any modifications of the Note;
  4)   Any action or inaction on the Note and/or any modifications of the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;
  5)   Any change in the financial condition or business operations of Borrower or any guarantor(s);
  6)   Any changes in the terms of the Note and/or any modifications of the Note or other Loan Documents, except increases in the amounts due under the Note and/or any modifications of the Note; and
  7)   The time or place of any sale or other disposition of Collateral.

K.   Guarantor(s) waive(s) defenses based upon any claim that

  1)   SBA failed to obtain any guarantee;
  2)   SBA failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
  3)   SBA or others improperly valued or inspected the Collateral;
  4)   The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

Page 3 of 5

SBA FORM 2128

5) SBA impaired the Collateral;
6) SBA did not dispose of any of the Collateral;
7) SBA did not conduct a commercially reasonable sale;
8) SBA did not obtain the fair market value of the Collateral;
9) SBA did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;
10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;
11) SBA made errors or omissions in Loan Documents or administration of the Loan;
12) SBA did not seek payment from the Borrower, any other guarantor(s), or any Collateral before demanding payment from Guarantor(s);
13) SBA impaired Guarantor(s)' suretyship rights;
14) SBA modified the Note terms, other than to increase amounts due under the Note and/or any modifications of the Note. If SBA modifies the Note to increase the amounts due under the Note without Guarantor(s)' consent, Guarantor(s) will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;
15) Borrower has avoided liability on the Note and/or any modifications of the Note; or
16) SBA has taken an action allowed under the Note and/or any modifications of the Note, this Guarantee, or other Loan Documents.

7. **DUTIES AS TO COLLATERAL.**

Guarantor(s) will preserve the Collateral, if any, pledged by Guarantor(s) to secure this Guarantee. SBA has no duty to preserve or dispose of any Collateral.

8. **SUCCESSORS AND ASSIGNS.**

Under this Guarantee, Guarantor(s) include(s) successors, and SBA includes successors and assigns.

9. **GENERAL PROVISIONS.**

L. ENFORCEMENT EXPENSES. Guarantor(s) promise(s) to pay all expenses SBA incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

M. SUBROGRATION RIGHT. Guarantor(s) has/have no subrogation rights as to the Note or the Collateral until the Note or any modifications of the Note is/are paid in full.

N. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor(s) is/are jointly and severally liable.

O. DOCUMENT SIGNING. Guarantor(s) must sign all documents necessary at any time to comply with the Loan Documents and to enable SBA to acquire, perfect, or maintain SBA's liens on Collateral.

P. FINANCIAL STATEMENTS. Guarantor(s) must give SBA financial statements as SBA requires.

Q. SBA'S RIGHTS CUMULATIVE, NOT WAIVED. SBA may exercise any of its rights separately or together, as many times as it chooses. SBA may delay or forgo enforcing any of its rights without losing or impairing any of them.

R. ORAL STATEMENTS NOT BINDING. Guarantor(s) may not use an oral statement to contradict or alter the written terms of the Note and/or any modifications of the Note or this Guarantee, or to raise a defense to this Guarantee.

S. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

SBA FORM 2128

T.   CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by SBA as to the Loan.

10.  **GUARANTOR(S) ACKNOWLEDGMENT OF TERMS.**

Guarantor(s) acknowledge(s) that Guarantor(s) has/have read and understands the significance of all terms of the Loan Authorization Agreement, Note and/or any modifications of the Note, this Guarantee, including all waivers, and certifies, to the best of its, his or her knowledge and belief, that the certifications and representations in the attached Certification Regarding Lobbying are true, correct and complete and are offered to induce SBA to make this Loan.

11.  **GUARANTOR(S) NAME(S) AND SIGNATURE(S).**

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.


GUARANTOR:


_____

Brandon Heitmann, individually

SBA FORM 2128

**Small Business Administration**

| Transcript of Account | | | | | |
|---|---|---|---|---|---|
| Name | Exigent Landscaping LLC | | Ending Balances | | |
| Loan Program | 2020 - Disaster COVID | | Transcript | LAS/ELIPS | Difference |
| Loan Number | ███████ | Current Loan Status Code | 3 | Principal Balance | $500,000.00 | $500,000.00 | $0.00 |
| Loan Approval Date | 07/13/2020 | Loan Type | 1 | Accrued Int Balance | $6,271.23 | $6,271.23 | $0.00 |
| | | | | Payable Balance | $0.00 | $0.00 | $0.00 |

| Payoff Balances | | | | | | |
|---|---|---|---|---|---|---|
| Payoff Date | Principal | Accrued Interest | Chargeoff Interest | Interest to Payoff Date | Payoff Amount | Daily Interest |
| 02/29/2024 | $500,000.00 | $6,271.23 | $0.00 | $45,616.44 | $551,887.67 | $51.3698630 |

| Transaction History | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Effective Date | Int Days | INT Rate | Remittance TC | Disburse CPC | Remittance | Principal | Interest | Accrued Interest | Principal Balance | Accrued Interest Balance | Changeoff Interest Balance | Payable Balance | Acct 4020 | Payment Application |
| 07/15/2020 | 0 | 3.750% | 200 | $-140,000.00 | $0.00 | $140,000.00 | $0.00 | $0.00 | $140,000.00 | $0.00 | $0.00 | $0.00 | $0.00 | PF |
| 09/24/2021 | 436 | 3.750% | 200 | $-360,000.00 | $0.00 | $360,000.00 | $-6,271.23 | $6,271.23 | $500,000.00 | $6,271.23 | $0.00 | $0.00 | $6,271.23 | PF |
| | | | Summary: | $-500,000.00 | $0.00 | $500,000.00 | $-6,271.23 | $6,271.23 | $500,000.00 | $6,271.23 | $0.00 | $0.00 | $6,271.23 | |

LISTED ABOVE IS A TRANSCRIPT OF ACCOUNT AS OF THE DATES INDICATED, TAKEN FROM THE RECORDS OF THIS AGENCY.

Authorized Signature _____     Date _____

| Name | Face Amount Scheduled | Brandon Heitmann POC number | Amount from Brandon Heitmann POC | Amount for Debt Limit | Notes |
|---|---|---|---|---|---|
| 24 Capital | 183000 | n.a. | n.a. | 0 | not list Debtor as guarantor per POC 44 Exigent |
| AG Gas Service | 0 | | | 0 | Bucket 1 Exigent CYA; no personal liability, listed for notice |
| Alex Boyd and Rebecca Boyd | 0 | 16 | 300000 | 0 | unliquidated tort claim |
| Amanda Pisarski | Unknown | | | 0 | no personal liability |
| Americredit dba GM Financial/scheduled as GMC Financial | 22325 | 4-2 and 5 | 25280.17 | 22325 | counted for eligibility |
| American Express | 450000 | 11 | $449,395.08 | $449,395.08 | counted for eligibility |
| American Leak Detection | 0 | | | 0 | Bucket 1 Exigent CYA; no personal liability, listed for notice |
| aqua hall | 0 | | | 0 | Bucket 1 Exigent CYA; no personal liability, listed for notice |
| arlington masonry supply | 0 | | | 0 | Bucket 1 Exigent CYA; no personal liability, listed for notice |
| Associated Bank | 767673.13 | 9 | 770598.57 | 767673.13 | counted for eligibility |
| Auto Owners Insurance | 0 | | | 0 | Bucket 1 Exigent CYA; no personal liability, listed for notice |
| Barajas Enterprise | 0 | | | 0 | Bucket 1 Exigent CYA; no personal liability, listed for notice |

| Name | Face Amount Scheduled | Brandon Heitmann POC number | Amount from Brandon Heitmann POC | Amount for Debt Limit | Notes |
|---|---|---|---|---|---|
| Blue Cross Blue Shield | 0 | | | 0 | Bucket 1 Exigent CYA; no personal liability, listed for notice |
| Campo Disposal | 0 | | | 0 | Bucket 1 Exigent CYA; no personal liability, listed for notice |
| caterpillar financial | 7000 | | | 7000 | counted for eligibility |
| Citi Bank | Unknown | | | 0 | Bucket 1 Exigent CYA; no personal liability, listed for notice |
| Citizens Bank | 75000 | 10 | 71341.03 | 75000 | counted for eligibility |
| Classic Pools | 0 | | | 0 | Bucket 1 Exigent CYA; no personal liability, listed for notice |
| Congil Truck Lines | 0 | | | 0 | Bucket 1 Exigent CYA; no personal liability, listed for notice |
| connelly crane | 0 | | | 0 | Bucket 1 Exigent CYA; no personal liability, listed for notice |
| Connexus Credit Union | 151852 | 18 | 163794.44 | 151852 | counted for eligibility |
| Dana Caran | 0 | | | 0 | unliquidated tort claim |
| Daniel Carter | Unknown | 15-2 | 300000 | 0 | unliquidated tort claim |
| discover | 6300 | 1 | 6292.25 | 6300 | counted for eligibility |
| erc specialist | 0 | | | 0 | Bucket 1 Exigent CYA; no personal liability, listed for notice |
| Everest Business Funding | 200000 | 19 | 222042.9 | 200000 | counted for eligibility |

| Name | Face Amount Scheduled | Brandon Heitmann POC number | Amount from Brandon Heitmann POC | Amount for Debt Limit | Notes |
|---|---|---|---|---|---|
| exigent | unknown | | | 0 | Bucket 1 Exigent CYA; no personal liability, listed for notice |
| Fantastic Pools LLC | 0 | | | 0 | Bucket 1 Exigent CYA; no personal liability, listed for notice |
| Fifth Third Bank | 72500 | 8-2 | 36836.39 | 72500 | counted for eligibility |
| first foundation bank | 0 | | | 0 | Bucket 1 Exigent CYA; no personal liability, listed for notice |
| fleet masters equipment | 0 | | | 0 | Bucket 1 Exigent CYA; no personal liability, listed for notice |
| Forest Brook Estates Homeowners Assoc. | 500 | 21 | 1250 | 500 | counted for eligibility |
| fundbox financial | Unknown | | | 0 | Bucket 1 Exigent CYA; no personal liability, listed for notice |
| Gateway Engineering | 0 | | | 0 | Bucket 1 Exigent CYA; no personal liability, listed for notice |
| Google | 0 | | | 0 | Bucket 1 Exigent CYA; no personal liability, listed for notice |
| Grace Transport | 0 | | | 0 | Bucket 1 Exigent CYA; no personal liability, listed for notice |
| Gunther Services | 1000 | | | 0 | Bucket 1 Exigent CYA; no personal liability, listed for notice |
| Hector Orozco | 0 | | | 0 | unliquidated tort claim |

| Name | Face Amount Scheduled | Brandon Heitmann POC number | Amount from Brandon Heitmann POC | Amount for Debt Limit | Notes |
|---|---|---|---|---|---|
| Internal Revenue Service | unknown | 3-3 | 157272.8 | 0 | unliquidated |
| IOU Central Inc. d/b/a IOU Financial | 450000 | | | 450000 | counted for eligibility |
| ivan salem | 0 | | | 0 | unliquidated tort claim |
| J&H Transportation Co. | 0 | | | 0 | Bucket 1 Exigent CYA; no personal liability, listed for notice |
| Jay's Septic Service | 0 | | | 0 | Bucket 1 Exigent CYA; no personal liability, listed for notice |
| Jeff English | 0 | | | 0 | unliquidated tort claim |
| Joe Hebeka and Angela Hebeka | 0 | | | 0 | unliquidated tort claim |
| joe regalado | 0 | | | 0 | unliquidated tort claim |
| john benincasa | 0 | | | 0 | unliquidated tort claim |
| Kabbage | 50000 | | | 50000 | contingent guarantee |
| kelsey acho | 0 | | | 0 | unliquidated tort claim |
| kirk huth | 0 | | | 0 | Bucket 1 Exigent CYA; no personal liability, listed for notice |
| kristen toma | 0 | | | 0 | unliquidated tort claim |
| lafayette federal | 53200 | | | 53200 | counted for eligibility |
| lee cameron | 0 | | | 0 | unliquidated tort claim |
| LVNV Funding | | 14 | $5,580.45 | | was not scheduled |
| Macallister Rental | 0 | | | 0 | Bucket 1 Exigent CYA; no personal liability, listed for notice |
| Malek Shamaya | 76000 | | | 0 | Bucket 1 Exigent CYA; no personal liability, listed for notice |

| Name | Face Amount Scheduled | Brandon Heitmann POC number | Amount from Brandon Heitmann POC | Amount for Debt Limit | Notes |
|---|---|---|---|---|---|
| marc piper | 0 | | | 0 | unliquidated tort claim |
| marco | 0 | | | 0 | unliquidated tort claim |
| Mastercard | 4633 | | | 4633 | counted for eligibility |
| Matt Decoster | 0 | | | 0 | unliquidated tort claim |
| Matt Martin | 0 | 7 | 75000 | 0 | unliquidated tort claim |
| Megan Madaus | 0 | | | 0 | unliquidated tort claim |
| Mohammed Saad | 0 | 22 | 322769.29 | 0 | unliquidated tort claim |
| nancy afr | Unknown | | | 0 | no personal liability, listed for notice |
| Nick Pinozzi | 0 | | | 0 | no personal liability, listed for notice |
| oakland fuels | 0 | | | 0 | no personal liability, listed for notice |
| Pawnee Leasing Corporation | 36000 | 17 | 37164.8 | 36000 | counted for eligibility |
| Peterson Brothers Co. | 0 | | | 0 | Bucket 1 Exigent CYA; no personal liability, listed for notice |
| Quench Water | 0 | | | 0 | Bucket 1 Exigent CYA; no personal liability, listed for notice |
| Ratnesh Mehra | 0 | | | 0 | unliquidated tort claim |
| Rock Bottom | 0 | | | 0 | Bucket 1 Exigent CYA; no personal liability, listed for notice |
| Ron Heitmann | Unknown | | | 0 | no personal liability, listed for notice |
| Ryan Kelly | 0 | | | 0 | unliquidated tort claim |
| Safeco Insurance | 0 | | | 0 | Bucket 1 Exigent CYA; no personal liability, listed for notice |

| Name | Face Amount Scheduled | Brandon Heitmann POC number | Amount from Brandon Heitmann POC | Amount for Debt Limit | Notes |
|---|---|---|---|---|---|
| SCP Pool Corp. | 60000 | 2 | 61288.06 | 60000 | counted for eligibility |
| Sheffield | 13000 | 6 | 13024.9 | 13000 | counted for eligibility |
| Simna Kumar | 0 | | | 0 | unliquidated tort claim |
| Site One Landscape Supply | 14344 | | | 14344 | Bucket 1 Exigent CYA; no personal liability, listed for notice |
| Stafford Landscaping | 0 | | | 0 | Bucket 1 Exigent CYA; no personal liability, listed for notice |
| state of michigan | 0 | 23 | 7552.78 | 7552.78 | counted for eligibility using proof of claim amount |
| The Hills of Lone Pine Association | 0 | | | 0 | unliquidated tort claim |
| U.S. Bank | 3044 | 13 | $2,657.07 | 3044 | counted for eligibility |
| U.S. Small Business Administration | 500000 | 20 | 551887 | 0 | contingent, unliquidated |
| Unique Funding | 85000 | | | 85000 | counted for eligibility |
| Upstart Loan Operations | 0 | | | 0 | Bucket 1 Exigent CYA; no personal liability, listed for notice |
| Valley Transport, Inc. | 0 | | | 0 | Bucket 1 Exigent CYA; no personal liability, listed for notice |
| Washington Twp | 3800 | | | 3800 | counted for eligibility |
| Western Equipment Finance, Inc. | 77273.91 | | | 0 | Bucket 1 Exigent CYA; no personal liability, listed for notice |
| Wiegands Farm | 0 | | | 0 | Bucket 1 Exigent CYA; no personal liability, listed for notice |

| Name | Face Amount Scheduled | Brandon Heitmann POC number | Amount from Brandon Heitmann POC | Amount for Debt Limit | Notes |
|---|---|---|---|---|---|
| Wings Financial Credit Union | Unknown | 12 | 21164.24 | 0 | counted for eligibility using proof of claim amount |
| Wright Engineering | 0 | | | 0 | Bucket 1 Exigent CYA; no personal liability, listed for notice |
| X1 Inc | 4876 | | | 4876 | counted for eligibility |
| TOTAL | | | | 2537994.99 | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |